UNITED STATES, COMPLAINANT, v. CHURCH OF
JESUS CHRIST OF LATTER DAY SAINTS,
AND OTHERS, RESPONDENTS.

RECEIVER OF CORPORATION.—RIGHT TO TAKE POSSESSION OF PROP-
ERTY.—The receiver's power to take possession of property, while
limited to such property as the corporation owned at the date of
the dissolution of the corporation, is not bounded by the rights
of the corporation at the date of dissolution, and he may attach
any assignment of the church corporation made prior to the dis-
solution, which was illegal as to third parties.

FRAUDULENT ASSIGNMENT.—A transfer of corporate property was
dated the 28th day of February, 1887, but no delivery took place
prior to the 3rd day of March, 1887, and the act dissolving the
corporation passed both houses of Congress prior to the 28th day
of February and went into effect on the 3rd day of March, 1887.
*Held*, that the transfer under section 1017 Compiled Laws, 1876,
was in fraud of the rights of the government and void as to the
receiver.

PETITION TO SET ASIDE FRAUDULENT TRANSFER.—PARTIES.—In a pe-
tition brought by said receiver to require a party to turn over
certain property to the receiver, where it appears that the fraud-
ulent assignment was made to another corporation and by that
corporation the property was assigned to a trustee, who holds the
legal title and is in possession, the said corporation is not a
necessary party.

ZANE, C. J., *dissenting*.

ORIGINAL petition in supreme court brought by the re-
ceiver of the Church of Jesus Christ of Latter Day Saints
asking that certain property be required to be turned over
to him. The petition was brought in the original case.
The facts appear from the opinions. For the original case
see ante p. 361.

*Mr. P. L. Williams* and *Mr. George S. Peters* for the
petition.

*Messrs. Sheeks & Rawlins* and *Mr. LeGrande Young*,
contra.

BOREMAN, J.:

In this suit, brought to wind up the affairs of the late corporation of the Church of Jesus Christ of Latter-Day Saints, a receiver was appointed of the property and effects of said late corporation, and the receiver has filed his petition herein, alleging that certain personal property of said late corporation is in the possession of certain of the defendants, namely, John R. Winder, Robert T. Burton, and William B. Preston, and prays that an order be made commanding said defendants to deliver the property to the receiver. Said defendants, Winder, Burton, and Preston, answered to said petition, denying that Winder or Burton had possession of said property, and denying that Preston had possession of it in the capacity of agent for said church, or for any of the defendants; and they allege, as further and separate answer, that on the 28th of February, 1887, John Taylor was trustee-in-trust for the said church, and was in possession of said property, and assigned and delivered the same to another corporation called the "Church Association of the Salt Lake Stake of Zion;" and that said association, on the 12th day of March, 1887, assigned, transferred, conveyed, and delivered said property to William B. Preston, presiding bishop of said church, in trust, to be used and employed in the construction of the Salt Lake Temple; said temple being owned by the said Church of Jesus Christ of Latter-Day Saints; and at all times used exclusively for religious purposes. That said Preston, presiding bishop, then took possession of said personal property, except such as had been expended in the use and construction of the temple, and that such property now in his possession is being used for said designated purpose and none other. Upon the issues thus raised, a large amount of testimony has been taken, from which it appears that this property had come into the possession of John Taylor, as trustee-in-trust for the Church of Jesus Christ of Latter-Day Saints; that the purpose of the members of that church in donating the property was that it be used to aid in the construction of the Salt Lake Temple; that said Taylor, as such trustee in trust, executed a transfer of said property to the Church Association of Salt Lake Stake of Zion, a

corporation within the said church, and in said transfer the conveyance was treated as creating a trust in the association, for the purposes therein specified, and among such purposes was the construction of the temple. And, after this association had acted a few days in the matter, it, in turn, conveyed the property to William B. Preston, presiding bishop of said church, in trust to aid in the construction of the temple; it being understood, as the witnesses state, that the property was originally donated for that purpose. The purpose for which the property was to be used was not changed by any of the transfers. It was used by each holder or possessor for aiding in the construction of the temple.

The defendants contend that the receiver's power is confined and limited to the rights of the corporation of the Church of Jesus Christ of Latter-Day Saints at the date of its dissolution. The receiver's power is no doubt confined and limited to such property as the corporation owned at the date of its dissolution; but it would not follow that the receiver's power is confined and limited to the rights of the corporation at the date of the dissolution. The late corporation, or John Taylor, its trustee in trust, might not have had the authority to impeach the assignment or transfer to the church association; yet it would not follow that the receiver might not have that power. It is urged that he can have no such power, because he simply represents the court, and that the court's authority is in the nature of that of an administrator, and it represents only a deceased person. If the statement were correct that the receiver represents only the late corporation, perhaps he could not attack the transfer to the church association; but the fact is that the receiver represents other interests than those of the late corporation. He represents the government, and represents all who have interests in the property. The receiver does not come in as the appointee or the successor of the late corporation. He comes in by authority of the law, to act for the court in holding and possessing all property of the late corporation, subject thereafter to distribution or disposal according to the law and rights of parties. The court is in no sense the representa-

tive of the late corporation. The court takes charge of the affairs of the late corporation, under an act of Congress, for the purpose of winding them up; the corporation itself having become defunct. The receiver acts for the court, and, although the assignment to the church association may be good between the parties, yet, if the assignment or transfer were illegal, the receiver can impeach it by reason of his representing other interests than those of the dead corporation. It must be legal and valid against all parties, to preclude the attack. *Porter* v. *Williams*, 9 N. Y., 147-150. The assignment is in the nature of a gift for certain trust purposes.

The matter for our consideration, then, at this point, seems to be, was the assignment or transfer made by Taylor, trustee-in-trust, to the church association illegal? The transfer is dated the 28th day of February, 1887, but no delivery or notice thereof to the assignee took place, or is claimed to have taken place, until the 2d day of March following. Whether there was any delivery of the transfer or assignment on the 2d of March is not clear from the evidence; yet, if it took place on the 2d of March, the further inquiry arises as to whether there was a delivery of property on that day. A delivery at any subsequent time could not have taken place, as with the 2d day of March the life of the assignor corporation went out, and its existence ceased. No single witness swears positively that there was a delivery of the property on that day. Some attempt so to do, but before closing their testimony the inconsistencies and indefiniteness of their statements leave the question in doubt. Mr. A. M. Cannon, who seemed to act as the representative of the church association in the matter, refused to accept the possession of the property until it was listed to him, and that was not done for several days after the 2d of March. He took control in the office on 2d of March, but nothing further wasd one on that day. He claimed to have taken possession on the morning of the 2d of March, but was not positive. He was positive that he took possession in the morning of some day. If such was the fact, it would follow that the accounts should have begun on that day, and that the workmen who were operat-

ing under him should have had their pay for that day. But, as appears from the pay rolls in evidence, their pay began on the 3d of March. The inference from this is that he took charge of the office on the 3d of March. The evidence, taken as a whole, does not show that Mr. Cannon took possession on the 2d of March, but rather at a subsequent day. No one could deliver the property to him at any subsequent day. The corporation itself having gone out of existence, no one had authority to act for it. But at a subsequent day he did undoubtedly have possession, as the president of the church association, and retained it for several days. The transfer to the church association did not purport to give an absolute title to the association, but a title for certain purposes. The association was to hold the property in trust, with the privilege of appropriating it for temple purposes, or other specified purposes. It was authorized, under the transfer, to use the property for the erection, or to aid in the erection, of the Salt Lake Temple—a piece of property belonging to the late corporation. It did so appropriate it by transferring and assigning it to William B. Preston, presiding bishop of said church. We thus see that this property had come to John Taylor as trustee, and it was expected that it would be used for the building of the Salt Lake Temple. He, as trustee, transferred it to the church association, in trust for the same purpose, among others, and it was transferred by the church association to Preston, presiding bishop of said church, and to be used still for the same purpose. It was always, after donation, in the hands of some trustee, conveyed by one trustee to another and another; yet all the time it was being appropriated to the same purpose—to aid in the erection of the Salt Lake Temple. In all of the alleged changes the actual appropriation to that purpose was never changed. It was at all times being used and appropriated to improve the property of the late corporation, and for no other purpose. In all of these alleged changes there was no change in the manner of the appropriation, nor any important change in the individuals employed, nor in the places of employment, nor in the office, except that for a few days, early in March, 1887, Mr. A. M.

Cannon was acting as agent in the disbursement of the money, and appropriation of the property. During these few days, Mr. Cannon seemed to have, as agent, charge of the work that the employees were performing, and that work was for the improvement of the property of the late corporation. Except those few days in which Mr. Cannon had charge, William B. Preston, presiding bishop, had charge, both before and after Cannon; first under Taylor, trustee, and afterward under the church association. The office where all the business connected with this property was transacted was always the same, though under different names. There evidently was a private understanding between the parties to these various transfers that all their proceedings were in the interest of, and for the benefit and use of, the late corporation. They were never put to any other use.

. The territorial statute in regard to conveyances made for fraudulent purposes, says: "(1017) Sec. 8. Every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods, or things in action, or of rents, or profits issuing therefrom, and every charge upon lands, goods, or things in action, or upon the rents or profits thereof, made with the intent to delay, hinder, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands, and every bond or other evidence of debt given, suits commenced, decree or judgment suffered, with the like intent, as against the person hindered, delayed, or defrauded, shall be void." Comp. Laws, p. 341. This section is substantially same as 13 Eliz. c. 5, and is merely declaratory of the principles of the common law. *Hamilton* v. *Russel*, 1 Cranch, 310. It might be said, perhaps, that the section of the statute which declares invalid, as against creditors, an assignment made in trust for the benefit of the assignor, is not applicable to the case at bar for the reason that the word "creditors" alone was used; yet the section (1017) which we have quoted, makes void every assignment of goods, etc, "made with intent to delay, hinder, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands." This language is broad enough to

reach the circumstances of the present case. John Taylor, trustee, does not, in his transfer, indicate any necessity for making the transfer, nor does he indicate any advantage to be derived to the church or to the church associations thereby. The church association, so far as its directors, at least, were concerned, did not seem to know what to do with the property, but, as it was understood to have been originally donated to aid in building the Salt Lake Temple, the directors concluded that the proper thing to do was to continue it in that use, and convey it back, but to another trustee, for the identical purpose for which it was originally intended. The evidence does not show that there was any necessity for the transfers, nor an advantage anticipated, nor were the transfers made with any avowed object of bettering the condition of the church or of the assignees. Our attention is not called to any laudable or worthy purpose to be served by the transfer to the church association, or by it to Preston. On their faces, and by the evidence, they seem to have been aimless transactions, made with suddenness, and in a hurried and confused manner, for some purpose not avowed. The Congress of the United States had passed a bill to forfeit the property of the church to the government for school purposes, and that bill was well known to be then awaiting the President's signature, or to become a law by the expiration of the Constitutional period of 10 days, without his signature. The 10 days expired with the second day of March, 1887. It is not unreasonable to conclude, from all the circumstances, that the object of the transfer by Taylor, trustee, to the church association, was to save that property from the impending forfeiture. The government would be included in the words "other persons." The forfeiture did not take place until the bill became a law, but it was to avoid the apparently inevitable that the transfer was made. If a man, indicted for a crime, which, if he should be convicted, would cause a forfeiture of his goods, should give away his goods, the gift is void under the same statute, although made only in anticipation of forfeiture: *Pauncefoot's Case*, Lane, 44, 45. See *Twyne's Case*, 3 Coke, 80; 1 Smith, Lead. Cas., 36; Benj. Sales,

(2d Amer. Ed.,) sec. 675, note G. We are referred to Ang. & A. Corp., sec. 778*a*, for authority in a corporation to dispose of its property on the eve of dissolution. We do not find in that section any such authority, except that, when a moneyed corporation is about to go out of existence, it may assign its property to a trustee for the use of the stockholders, or indorse unexpired paper for the same use. That is an authority simply for dividing the property of the corporation, and not to defeat or delay or hinder or defraud any one; for in the next succeeding sections (779 and 779*a*) it will be seen that the rule of the common law as to forfeiture has never in England been applied to insolvent or dissolved moneyed corporations.

Taking all the facts together, we do not think that there was a delivery of the property to the church association prior to the 3d day of March, 1887, or that there ever was any change in the actual ownership of the property in question. It is now only in the hands of a different trustee, but the transfers were merely made to enable the church to retain what the law said it should not retain. They were not made in good faith, but for the evident purpose of defrauding the government of the benefits to be acquired under the statute. The statutes made for the suppression of frauds are to be interpreted liberally for that purpose. *Twyne's Case*, 3 Coke, 80; 1 Smith, Lead. Cas., 1. The real gist of the transfers was intended to be a conveyance by the church as incorporated to the church not incorporated. As this could not be done directly, it was necessary that it be done indirectly through the church association, as no other object for these various transfers appears other than the evasion of the consequences of the new law. The ownership of the property remained with the late corporation, and was evidently so intended, and it is being used by the defendants for the benefit of the late corporation. The church association was made a corporation within the late corporation. It was part and parcel of it, and its officers were officers of the late corporation, operating and acting for it. The church controlled them as its officers, and through them controlled the property; and the property was used, and is now being used, for the

benefit of the late corporation. The defendants, in their arguments, seem to consider that the incorporation of the church still exists, notwithstanding its annulment by the act of Congress. That question has in this case heretofore been settled; this court holding that the incorporation ceased to exist with the enactment of the law of Congress referred to. Yet, if it be not dissolved, but is still existing, then the property still belongs to it as much as it did before the transfer by Taylor, trustee. It was then held by a trustee for the benefit of the corporation; and it is now held by a trustee for the same purpose. It certainly would then be proper for the receiver to have possession of the property, pending the settlement of the questions in issue. The receiver is merely the custodian of it, to await the final decision of the issues in the case. The Salt Lake Temple block was the property of the late corporation, and is now in the hands of the receiver. It is held by trustees, the defendants in this proceeding, said Preston, Burton, and Winder. Preston is the presiding bishop of the whole church, and the only one, and, as such, now holds the property in question, to be used to improve this Temple block. The receiver, it would appear, being in possession of the Temple block itself, is the proper custodian to hold the property in question until a decision be reached upon the final hearing.

The principal ground, however, urged by the defendants against the granting of the prayer of the petitioner is that the court has no authority to act in the matter unless the Church Association of the Salt Lake Stake of Zion, the assignee of Taylor, trustee, be made a party to the suit or proceeding. The point was not raised by demurrer or by answer. It is raised for the first time on the argument. If the church association has any existing interest in the property, or will be affected by the decree it would be a necessary party. According to the terms and tenor of the assignment by Taylor, trustee, to the church association, that assignment committed to the church association a trust. In turn, the church association, upon the authority of the assignment, transferred all of its rights and powers to another trustee, the presiding bishop of said church. If

we find that the church association has an existing interest,
we would by like reasoning have to find that the original
donors—those who donated the property to the church, to
be held by Taylor, as trustee—have an existing interest.
But there seems to be no question but that the donors
parted with their title, although the donations were made
for a specific trust purpose—the building of the Salt Lake
Temple.   The donors possibly might have the right to
compel the use of the property for trust purposes, and
to prevent its being used for anything else.   The church
association has, in an equally absolute manner, conveyed
away whatever rights they had in the property.   It had no
interest except for trust purposes; and that is what it
transferred to Preston, the presiding bishop of the church.
It parted completely and absolutely with its title.   The
answer alleges that the association "assigned, set over, and
transferred and delivered all the property" to Preston; and
that is the purport of the transfer itself.   If on the other
hand, it be true that the church association should be made
a party, because it was the beneficiary party in the transfer
to it, then it would follow, by parity of reasoning, that the
present unincorporated Church of Jesus Christ of Latter-
Day Saints should be made a party; for the transfer to
Preston, presiding bishop, purports to make the present
church the beneficiary.   It would not be necessary to make
Preston a party to this proceeding if he did not have pos-
session of the property.   We see no reason, on any ground,
to say that the church association is a necessary party.   Its
rights will in no manner be affected by any decree in the
case.   It was, like Taylor or Preston, simply one trustee in
the chain of trustees; and when that was ended by the
assignment to Preston its connection with the property
ended.   Preston was no more its agent than was it the
agent of Taylor, trustee, or than Taylor was the agent of
the original donors.   The character in which each held the
property was the same.   The church association could,
therefore, in no sense be a necessary party.   *Bailey* v.
*Inglee*, 2 Paige, 278.   We see no reason to hold that the
property in question is, or at any time since February,
1887, has been, the property of any one other than the late

corporation. The prayer of the petition is granted, with costs.

HENDERSON, J., concurred.

ZANE, C. J., (*dissenting.*)

I dissent from the judgment of the court. The receiver asks the court to order William B. Preston to deliver forthwith to him, as receiver, the personal property in his possession, and described in the petition. It is alleged in the petition that the title and possession of this property was in the defendant, the Church of Jesus Christ of Latter-Day Saints at the time of its dissolution by the act of Congress of March 3, 1887. That corporation and a number of other defendants file their joint and several answer, in which they allege that on the 28th day of February, 1887, the late John Taylor was the trustee in trust for the corporation above named, and was in possession of the property in question; and on that day, as trustee, he assigned, transferred, and delivered the same to the Church Association of the Salt Lake Stake of Zion, a corporation, which then and there took possession of it; and that afterwards, on the 12th day of March, 1887, the latter corporation assigned and transferred the property to William B. Preston, presiding bishop of said church, in trust to be used and employed in the construction of the Salt Lake Temple, property owned by the church on and before July 1, 1862, and that said property at all times has been used by it exclussively for religious purposes; and that Preston then and there took possession of such property, and is using it in building the temple, and in no other way.

The assignments above mentioned are produced in evidence; and the incorporation on the 3rd day of July, 1886, of the Church Association of the Salt Lake Stake of Zion is also shown. This latter corporation is not made a party to the original bill or to this proceeding. In view of these facts, and without a trial, ought the court to assume that this corporation and its trustee, Preston, has no title or right to the possession of the property, and grant a per-

emptory order to deliver the possession to the receiver, or should the court leave the receiver to his appropriate remedy by action?   When the receiver finds property in the possession of a person other than the defendant, and that person claims the right to it by virtue of a superior title, he should institute an appropriate action to determine the title and right of possession.   Courts will not assume that such third party, claiming by virtue of a superior title, has no right to the property, and premptorily order him to turn over the possession to the receiver, unless it is clear that such third party has no right to it.   The court can act in such a summary way only when the rights of the parties are obvious, and not the subject of serious controversy.   1 High. Rec., sec. 149; *Gelpeke* v. *Railroad Co.,* 11 Wis., 454.   The Church of Jesus Christ of Latter-Day Saints is the name adopted by a religious sect or denomination that professes a set of doctrines held by the members in common.   The church consists of societies and congregations in this and other territories, and in the various states and foreign countries.   Its members residing in Utah incorporated under a special act of the territorial legislature, in force January 19, 1855.   That act was repealed by the congressional enactment of March 3, 1887.   But it appears that the members of the church in Salt Lake county associated themselves under the name of the "Church Association of Salt Lake Stake of Zion," and by that name were incorporated under the general law of the territory authorizing incorporations for religious, educational, and other purposes.   This is not the corporation organized under the special act of 1855, and disincorporated by the act of Congress of March 3d.   The Church Association of the Salt Lake Stake of Zion is still in existence, and I am not prepared to say that it had not the right to receive such money and property as might be necessary in order to acquire such real estate as might be necessary, whereon to erect houses of worship and parsonages, and for burial grounds, and to receive the funds and means necessary to erect such houses of worship and parsonages, and to improve such burial grounds.   Such right is clearly recognized by sections 13, 17 and 26 of the act of Congress of March 3, 1887.

In view of some of the positions taken and arguments
advanced by the majority of the court, and in order that
I may be better understood, I will refer to the sections
mentioned in connection with section 3 of the act of Con-
gress of July 1, 1862. This last section prohibited any
corporation or association for religious purposes from ac-
quiring or holding real estate in any territory of the
United States of greater value than $50,000, declared that
such real estate acquired or held contrary to such provis-
ion should be forfeited and escheated to the United States,
and provided that vested rights then existing in real estate
should not be impaired thereby. Section 13 of the act of
Congress of March 3, 1887, made it the duty of the attor-
ney general to prosecute proceedings to forfeit and escheat
to the United States, for the use of common schools, the
property of corporations obtained or held in violation of
said section 3, but provided that no building, or the
grounds appurtenant thereto, held and occupied exclusively
for the purpose of the worship of God, or parsonages con-
nected therewith, or burial ground, should be forfeited.
This section does not limit the value of real estate acquired
after the act of 1862 to $50,000, but exempts from forfeiture
all buildings, and the grounds appurtenant thereto, held
and occupied exclusively for the purposes of the worship
of God, and parsonages connected therewith, and burial
grounds, even though exceeding that value. The seven-
teenth section of the act of March 3, 1887, annuls the
charter of the corporation called the "Church of Jesus
Christ of Latter-day Saints," dissolves the corporation,
and requires proceedings to be taken to wind up its af-
fairs, and makes it the duty of the court to make proper
decrees for transferring the title to real property held
and used by the corporation for places of worship, parson-
ages, and burial grounds of the description mentioned in
sections 13 and 26 of the same act, to the trustees named
therein. While this section dissolves the corporation,
and annuls its charter, it does not, in terms, forfeit and es-
cheat to the United States any property. It does provide
for the transfer of real estate of the description named to
trustees mentioned in sections 13 and 26. Section 26 au-

thorizes the authorities of any sect, society, or congrega-
tion to hold, through trustees, such real property for
houses of worship, parsonages, and burial grounds as may
be necessary for the convenient use of the several congre-
gations of such religious sect.    To this extent the right is
expressly given by this section to hold real estate, and,
by implication, to acquire real estate, and to erect houses
of worship and parsonages, and to improve burial grounds,
and to receive and expend the money or other means neces-
sary to those ends.    We cannot assume that the act of
March 3, 1887, forfeited and escheated to the United States
all the property held by the corporation known as the
"Church of Jesus Christ of Datter-day Saints" at the time
that act took effect.    It only forfeited and escheated such
real estate as had been obtained and was held in violation
of the act of 1862, and only so much of that as did not
consist of buildings, and the grounds appurtenant thereto,
held and occupied exclusively for the purposes of the
worship of God, and parsonages connected therewith, and
burial grounds.    Real property, consisting of houses of
worship, parsonages, and the grounds necessary therefor,
and burial grounds, such as were necessary for the con-
venience and use of the several religious congregations
and societies of such sect, were not forfeited and escheated
to the United States.    Such property the seventeenth sec-
tion mentioned, required the court, by decree, to transfer
to the trustees of the congregations or societies of such
sect mentioned in section 26.    To whom the personal prop-
erty of the late corporation of the Church of Jesus Christ
of Latter-day Saints, owned by it at the time of its dis-
solution, shall go, must be determined by the final decree.
In the case of *U. S. v. Church,* ante p. 361 the court said:
"In deciding this motion, we are not called upon to finally
determine the rights of the parties with respect to the
property involved in this case.    Such rights will be de-
cided as they ultimately appear; and if the receiver ap-
pointed shall claim a right to the possession of any prop-
erty, as receiver, to which third parties also claim a right,
the issue will then be determined."    And in my judgment,
if such third party in possession claims a right, by a

superior. title, as in this proceeding, the proper remedy to test the right is an appropriate action, not a peremptory order, such as is asked.

Under the facts, as they appear, I am clearly of the opinion that the receiver should institute the proper action if he wishes to test the right of the Church Association of the Salt Lake Stake of Zion and its trustee to the property in question. Then they would be given their day in court; and have an opportunity to be heard on the facts and the law. Such would be due process of law. I am unable to concur in much of the reasoning of the majority of the court, and in the conclusion reached.