PITTSBURG CARBON COMPANY (Limited), Appellant, *v.* FRANK C. McMILLIN as Receiver, etc., Respondent.

In 1887 plaintiff, with other corporations engaged in the manufacturing of carbon, entered into a contract with H., the object of which was, by a combination, to vest in H., as a common trustee, the management and control of the business of manufacturing and selling their products. The several companies agreed to lease to such trustee their respective factories, and operate them under his direction. He was to designate the kind of goods to be manufactured, fix the prices at which and the persons to whom they should be sold, and, after paying expenses, divide the net proceeds and profits as provided in the contract. When this contract was made plaintiff had an outstanding contract to furnish carbons to the B. E. L. Co. from time to time. Plaintiff assigned to H., as such trustee, all existing contracts, and he assumed their performance. Carbons manufactured at plaintiff's factory in April, May and June 1887, were billed in the name of H., and delivered under said contract to the B. E. L. Co. About July, 1887, plaintiff refused to continue in the combination, and an action was commenced against the trustee and the contracting corporations to dissolve the same, which resulted in the appointment of defendant as receiver of its property. In an action brought by plaintiff to recover for said carbons, the B. E. L. Co. paid the amount into court. The court found that the contract to combine was made for unlawful purposes, and was illegal; that the trust was then insolvent, and its assets, including the claim against the B. E. L.

Co., insufficient to pay its creditors. *Held,* that, as between the plaintiff and the receiver, the latter was entitled to the fund; that plaintiff stood in the position of a party to an illegal contract claiming a fund, which, if the contract was valid, belonged to the trust combination, and to sustain the action would permit it to escape from the operation of the rule which denies affirmative relief to a party to an illegal contract.

As to whether, if the B. E. L. Co. had not paid the funds into court, plaintiff could have enforced a recovery against it, although there was no adverse claimant *quære.*

A receiver of an insolvent corporation unites in himself, not only the rights of the corporation, but those of creditors; he may, in the interest of creditors, assert a claim which he might be unable to do, as a representative solely of the corporation, and he may disaffirm dealings of the corporation in fraud of the creditor's rights.

Reported below, 53 Hun, 67.

(Argued December 12, 1889; decided January 14, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made June 29, 1889, which affirmed a judgment in favor of defendant, entered upon a decision of the Court on trial at Special Term.

This action was originally brought by plaintiff against the Brush Electric Light Company to recover for carbons alleged to have been delivered to it during the months of April, May and June, 1887, under a contract between the parties.

By order of interpleader, defendant, who claimed the amount due as receiver of the united carbon companies, was substituted as defendant, and the money was paid into court. On March 1, 1887, plaintiff entered into a contract with Edward C. Hawk, as trustee, and with other companies engaged in the manufacture of carbon, by the terms of which plaintiff leased to said trustee its carbon works machinery for the term of five years, and agreed not to engage in the business during the continuance of the contract, except in accordance with its terms. At the request of the trustee plaintiff agreed to run its works under the direction of the trustee, the latter paying for material, labor, etc., and also a sum agreed upon for rent and a ratable proportion of the net profits. The trustee was given power to designate what factories of the

parties to the combination should be run, the kind or class of goods to be made, to fix the price of the goods manufactured, and to whom sold, and the terms of sale, to audit bills, etc. The trustee also agreed to carry out all of plaintiff's valid existing contracts. The contract was not to be binding on plaintiff until some other companies had entered into similar contracts with the trustee.

The further facts, so far as material, are stated in the opinion.

*E. S. Crosser* for appellant. The trust contract was null and void and could not in any way be ratified. (Bishop on Cont. 469, 471, 473 ; 3 A. & E. Ency. of Law, 872 ; 9 id. 880 ; *Thorne* v. *T. Ins. Co.*, 80 Penn. St. 15 ; *Shisler* v. *Vandike*, 92 id. 447 ; *S. C. Bank* v. *King*, 44 N. Y. 87 ; *Arnot* v. *P. C. Co.*, 68 id. 558 ; *Stanton* v. *Allen*, 5 Denio, 434.) There can be no estoppel against asserting the invalidity of the trust contract. (Green. on Pub. Pol., Rule 126 ; *Wheeler* v. *Wheeler*, 5 Lans. 355 ; *Langan* v. *Sankey*, 55 Ia. 52 ; *Snyder* v. *Wyley*, 33 Mich. 483 ; *Stevens* v. *Wood*, 127 Mass. 123 ; 2 Kent's Com. 466 ; *Bredin's Appeal*, 92 Penn. 241.) The facts found do not invoke the extraordinary remedy of estoppel. The essential elements of estoppel are not found. (Bishop on Estop. [4th ed.] 679 ; *Edmunson* v. *Thompson*, 31 L. J. Exch. 207 ; *Merrill* v. *Tobin*, 30 Fed. Rep. 728, 743 ; *Hamlin* v. *Sears*, 82 N. Y. 327, 333 ; *Andrews* v. *A. L. Ins. Co.*, 85 id. 334.) The receiver represents the trust combination, with no better title to this claim than that of a voluntary assignee. His title is derived solely from the trust combination, with all previous equities and iniquities still attached thereto. (8 R. S., art. 3, § 68 ; *Curtiss* v. *Leavitt*, 15 N. Y. 9, 46, 47, 254, 296 ; *Cutting* v. *Damarel*, 88 id. 410, 418 ; *Honegger* v. *Wettstein*, 94 id. 253, 260 ; *Williams* v. *Babcock*, 25 Barb. 109 ; *McHarg* v. *Donelly*, 27 id. 100 ; *Bell* v. *Shibley*, 33 id. 610 ; *Receivers* v. *P. G. Co.*, 3 Zab. 283, 292 ; *Symes* v. *Hughes*, L. R. [9 Eq. Div.] 474 ; Greenhood on Public Policy, Rules 2, 10, 42 ; High on Receivers, §§ 245, 315 ; Beach on Receivers, §§ 699–706 ; Story Eq. Jur., § 831.) The respondent's position is not

strengthened by urging the claims of the creditors of the trust, and by relying on their real or supposed innocence. The burden was on these creditors of ascertaining the nature of the trust, and the limits of the trustees' authority. (*Swan* v. *P. Bank*, 24 Hun, 577; *Smith* v. *Anderson*, L. R. [15 Ch. Div.] 247; *Cary* v. *Gregory*, 6 J. & S. 127; *Austin* v. *Monroe*, 47 N. Y. 360; *New* v. *Nicholl*, 73 id. 130; *Storrs* v. *Flint*, 14 J. & S. 498.) The appellant's right to recover this fund antedates the trust contract and is clear of all its taint; and the respondent to succeed must plant himself squarely upon the said contract and secure the aid of the court to enforce the same. (*Keene* v. *Kent*, 4 N. Y. S. R. 429; Bishop on Cont. § 469; Pomeroy Eq. Jur. § 401, 940; Wharton on Cont. § 349; *Steers* v. *Lashly*, 6 Term Rep. 61; *Sykes* v. *Beadon*, L. R. [11 Ch. Div.] 170; *Armstrong* v. *Toller*, 11 Wheat. 258; *Thompson* v. *Thompson*, 7 Ves. 470; *Snell* v. *Dwight*, 120 Mass. 9; *Dunham* v. *Presby*, Id. 285; *M. R. C. Co.* v. *B. C. Co.*, 68 Penn. 173, 188.)

*Ansley Wilcox* for respondent. Appellant cannot set up the illegality of its own contract as against the receiver who represents not only itself and the other parties to the contract but *bona fide* creditors, who have dealt with the trust or combination and have given credit to it in the ordinary course of business. (Laws of 1858, chap. 314; *Attorney-General* v. *G. M. L. In. Co.*, 77 N. Y. 272; *Talmage* v. *Pell*, 7 id. 328, 346, 347; *F. & M. Bank* v. *Jenks*, 7 Metc. 592; *Honegger* v. *Wettstein*, 15 J. & S. 125, 136, 137; 94 N. Y. 252; *Litchfield Bank* v. *Church*, 29 Conn. 150; *Alexander* v. *Rolfe*, 74 Mo. 516; *Osgood* v. *Laytin*, 3 Keyes, 521; *Osgood* v. *Ogden*, 4 id. 70; Broom's Leg. Max. 279, 288; *L. Bank* v. *Church*, 29 Conn. 150; Lindley on Part. [Eng. ed.] 201, 205; Metc. on Cont. 116; *Adams* v. *Creditors*, 14 La. 461; *Kinsman* v. *Parkhurst*, 18 How. [U. S.] 293; *Murray* v. *Vanderbilt*, 39 Barb. 140, 152; Whart. on Agency, §§ 25, 26, 249, 250, 320, 474, 542; Morawetz on Corp. § 750; Pomeroy's Eq. Juris. § 804; *Keene* v. *Kent*, 7 N. Y. S. R. 229,

232; *Brooks* v. *Martin,* 2 Wall. 70, 81; *Marsh* v. *Russell,* 66 N. Y. 288, 294; *Wann* v. *Kelly,* 5 Fed. Rep. 584; *W. U. T. Co.* v. *U. P. R. R. Co.,* 3 id. 423; *C. T. Co.* v. *O. C. R. R. Co.,* 23 id. 306.) Findings of fact will be presumed, and the findings made will be construed so as to support the conclusions of law. (*Tomlinson* v. *Mayor,* 44 N. Y. 601; *Phillip* v. *Gallant,* 62 id. 256; *Parker* v. *Baxter,* 86 id. 586; *Bennett* v. *Bates,* 94 id. 354; *Health Dept.* v. *Purdon,* 99 id. 237; *People* v. *Bank of N. A.,* 75 id. 560.) The illegality of a contract sued upon, where it does not necessarily appear upon the face of the contract itself, or from the proof offered to establish the contract, can only be proved under a pleading specially alleging the illegality. (*May* v. *Burras,* 13 Abb. [N. C.] 384; 94 N. Y. 252.)

Andrews, J. The finding that the contract of March 1, 1887, between the plaintiff and Edward S. Hawks, as trustee for the plaintiff and other carbon companies, was made for unlawful purposes and was illegal, was not excepted to, and is to be taken as an incontrovertable fact on this appeal. The ground of illegality is not expressly stated, but it is clearly to be inferred from the other findings and the opinion of the trial court that the contract was held to be illegal for the reason that it was entered into in furtherance of an unlawful combination between the plaintiff and other carbon companies in restraint of trade. The scheme of the parties to the combination was to vest in a common trustee the management and control of the business of manufacturing and selling carbons for electric lighting theretofore carried on separately by the companies forming the combination. To this end the several companies were to lease to the trustee their respective factories, and to operate them under the direction of the trustee, who was to designate the kind of goods to be manufactured, fix the prices at which and the persons to whom they should be sold, purchase all materials and supplies, collect the bills, and pay out of the common fund the cost of production, and divide the net proceeds and profits of the business between the several

parties to the combination in a ratio fixed by the contracts of the respective companies with the trustee.    The plaintiff, when the contract of March 1, 1887, was made, had an outstanding contract to furnish carbons to the Brush Electric Light Company from time to time, and in its contract with the trustee the plaintiff assigned to him all existing contracts, and the trustee assumed their performance.

The sum in controversy in this action has been paid into court by the Brush Electric Light Company, being the purchase-price of carbons manufactured and delivered to that company in April, May, and June, 1887.    They were manufactured at the plaintiff's factory, but were billed in the name of the trustee, and delivered in performance of the contract between the plaintiff and the Brush Electric Light Company, which the trustee had assumed.    In or about July, 1887, the plaintiff refused to continue any longer in the combination.    Thereupon an action was commenced in the Court of Common Pleas for Cuyahoga county, in the state of Ohio, the headquarters of the combination, by some of the members of the combination, against the plaintiff and other members thereof, to dissolve and wind up its affairs, and the proceedings resulted in the appointment of the present defendant as receiver of the property and assets of the trusteeship, with power, among other things, to take possession thereof, to collect the assets and pay and adjust claims arising out of the business.    No question is made on this appeal as to the jurisdiction of the Ohio court to entertain the proceeding and make the order appointing the receiver, and it is found that the receiver duly qualified and entered upon the discharge of his duties.    It is also found that at the time of the appointment of the receiver the trust was insolvent and that all the assets of the trust business, including the claim against the Brush Electric Light Company, are insufficient to pay its creditors.

The plaintiff stands in the attitude of a party to an illegal contract, claiming a fund which, if the contract was valid, would clearly belong to the trust combination, and not to the

plaintiff, as one of its members. The plaintiff has no standing to claim the fund in opposition to the clear import of the trust agreement, unless its repudiation of the contract in July, 1887, operated to make the plaintiff the vendor of the carbons delivered to the Brush Electric Light Company during the time the plaintiff remained a party to the combination. The carbons, it is true, were delivered in performance of the plaintiff's agreement made before the combination was formed. But the trustee assumed performance by contract with the plaintiff, and the Brush Electric Light Company accepted performance by him. To permit the plaintiff to treat the debt as a debt owing to it, and not to the trustee, would enable the plaintiff to escape from the operation of the rule which denies relief to a party to an illegal transaction. The plaintiff had a right to repudiate the contract of March 1, 1887. Its stipulations could not have been enforced against the plaintiff. The plaintiff, notwithstanding the contract, could have sold its carbons to the Brush Electric Light Company on its own account, and have received pay for them. But it did not do so. The agreement of March 1, 1887, was carried out in part. The carbons were manufactured by and for the trustee representing the combination, and were delivered to the purchaser as the property of the trust by the consent of the plaintiff, and the purchaser became the debtor of the trust, and not of the plaintiff. The repudiation of the trust agreement by the plaintiff after this transaction did not purge its previous participation in the illegal scheme. If the Brush Company had not voluntarily paid the fund into court, it would be a grave question whether the plaintiff could have enforced a recovery against that company, although there was no adverse claimant. (See *Dewitt* v. *Brisbane,* 16 N. Y. 508; *Johnson* v. *Bush,* 3 Barb. Ch. 207; *Talmage* v. *Pell,* 7 N. Y. 328.)

But, as between the plaintiff and the receiver of the trust combination, the latter is, we think, clearly entitled to the fund. It is claimed that no action could have been maintained by the trustee, representing the trust combination, against the Brush

Electric Light Company, to recover the purchase-price of the carbons, for the reason that the illegality of the combination would have constituted a good defense. Assuming this predicate, it is asserted that the receiver stands in the same position, and that his title is subject to the same infirmity as that of the combination which he represents. Without considering the assumption upon which this proposition is based, it is a sufficient answer to the proposition asserted, that the receiver unites in himself the right of the trust combination, and also the right of creditors, and that he may assert a claim as the representative of creditors, which he might be unable to assert as a representative of the combination merely. The general rule is well established that a receiver takes the title of the corporation or individual whose receiver he is, and that any defense which would have been good against the former, may be asserted against the latter. But there is a recognized exception, which permits a receiver of an insolvent individual or corporation, in the interest of creditors, to disaffirm dealings of the debtor in fraud of their rights. (*Gillet* v. *Moody*, 3 N. Y. 479; *Porter* v. *Williams*, 9 id. 142; *Curtis* v. *Leavitt*, 15 id. 9, 108.) Assuming that the trustee could not have recovered of the Brush Electric Light Company for the reasons suggested, it would be a very strange application of the doctrine that no right of action can spring from an illegal transaction, which should deny to innocent creditors of the combination, or to the receiver who represents them, the right to have the debt collected and applied in satisfaction of their claim. The just rule of the common law, that courts will not lend their aid to enforce illegal transactions at the instance of a party to the illegality, would be misapplied if permitted to be used to prevent the application of the fund in question to the payment of creditors of the combination.

We think the judgment is right, and it should, therefore, be affirmed.

All concur.

Judgment affirmed.