## AMERICAN CAN CO. et al. v. ERIE PRESERVING CO.

(Circuit Court, W. D. New York. February 20, 1909.)

No. 332.

**1. RECEIVERS (§ 12*)—INSOLVENCY—APPOINTMENT OF RECEIVER.**

A federal court of equity has jurisdiction to appoint a receiver for an insolvent corporation at suit of a general creditor, where the objection that it is not a judgment creditor is waived by the corporation.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 18; Dec. Dig. § 12.*]

**2. RECEIVERS (§ 32*)—INSOLVENCY—WHAT CONSTITUTES.**

An allegation in a bill that a corporation cannot pay its current obligations as they mature, and is unable in the ordinary course of its business to pay its liabilities, is a proper and sufficient allegation of insolvency in a suit in equity.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 46; Dec. Dig. § 32.*]

**3. RECEIVERS (§ 90*)—REPRESENTING CREDITORS.**

A receiver appointed for an insolvent corporation in a suit for its dissolution and the winding up of its affairs may contest the validity of liens or pledges made by the corporation in behalf of its general creditors.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 164; Dec. Dig. § 90.*]

Actions by and against receivers of federal courts, see note to J. I. Case Plow Works v. Finks, 26 C. C. A. 49.]

**4. PLEDGES (§ 11*)—NATURE AND ESSENTIALS—DELIVERY AND POSSESSION.**

It is essential to the validity of a pledge that the pledgee take and maintain an open, exclusive, and unequivocal possession such as to give reasonable notice to third parties that the ostensible ownership of the property is in him.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 28–35; Dec. Dig. § 11.*]

**5. PLEDGES (§ 11*)—NATURE AND ESSENTIALS—DELIVERY AND POSSESSION.**

A preserving company leased the warehouses at its factories to a warehousing company under an agreement that all of its products which were placed therein should be subject to a lien to such warehousing company. From time to time, on requisitions from its superintendent, who was also made custodian of the warehousing company, the latter issued warehouse receipts for certain of the goods, which receipts the preserving company pledged as collateral security. The warehouses were not marked, nor was anything done to indicate their possession by the warehousing company, except to record the leases, which were not required to be recorded, nor were the goods covered by the receipts separated from the others or in any way marked. *Held*, that there was not such visible possession of the property by the warehousing company as to render the receipts negotiable or to constitute a valid pledge as against receivers of the preserving company.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 28–35; Dec. Dig. § 11.*]

**6. PLEDGES (§ 11*)—INVALID PLEDGE.**

Where the parties to an attempted pledge omit an essential element, such as a visible delivery of possession to the pledgee, resulting in a secret incumbrance of the property, no equitable lien arises in his favor as against general creditors of the pledgor or a receiver representing them.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 28–35; Dec. Dig. § 11.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**7. WAREHOUEMEN (§ 15\*)—WAREHOUSE RECEIPTS—TRANSFER AS PLEDGE.**

Warehouse receipts issued by the treasurer of a corporation and delivered as collateral security for money borrowed by the corporation, covering goods of its manufacture, which remained in its warehouses mingled with its other goods and without any visible change of possession, indorsed by the corporation as collateral security, did not constitute a valid pledge nor create an equitable lien as against general creditors.

[Ed. Note.—For other cases, see Warehousemen, Dec. Dig. § 15.\*]

**8. WAREHOUSEMEN (§ 15\*)—WAREHOUSE RECEIPTS—NATURE AND REQUISITES.**

To constitute a negotiable warehouse receipt it must have been issued by one engaged in the business of warehousing.

[Ed. Note.—For other cases, see Warehousemen, Cent. Dig. § 31; Dec. Dig. § 15.\*]

In Equity. On exceptions to master's report.

Rogers, Locke & Babcock (Chauncey J. Hamlin, on the brief), for claimants.

Hull & Comstock, for receivers.

Love & Keating, for intervening creditors.

HAZEL, District Judge. This controversy relates to the validity of warehouse receipts issued by the American Warehousing Company upon the assets of the Erie Preserving Company, consisting of a large quantity of canned vegetables and fruits stored in the factories of the latter company at Irving, North Collins, and at Model City, in the state of New York. The material questions to be decided are: First, whether upon the elicited facts the different warehouse receipts indorsed by the defendant to Arbuthnot, Latham & Co., the New York County National Bank, Conrad Heinrich Donner, and Ladenburg, Thalmann & Co., as security for loans and advances, were in fact pledges of the goods covered by the receipts, and, if so, were such pledges valid against the general creditors? Second, whether, if the warehouse receipts in evidence did not constitute valid pledges of the property, have the claimants equitable liens which are superior to the title of the receivers? And, third, whether the receivers merely represent the Erie Preserving Company, and therefore cannot controvert the validity of the warehouse receipts, a right not possessed by the defendant.

The proposition last stated will be considered first. Briefly stated, the bill alleges the jurisdiction of the court from a diversity of citizenship of the parties, the insolvency of the defendant, and that unless receivers are appointed by the court the property will be sacrificed, and it prays for the dissolution of the corporation. The answer of the defendants admitting the insolvency, and the material allegations of the bill consented that receivers be appointed to take charge of the assets of the corporation.

The complainants are contract creditors. Ordinarily a receiver cannot be appointed for a corporation at the instance of a creditor who has not recovered judgment upon his claim and exhausted his legal remedy, yet, where a defendant who is confessedly insolvent has waived the objection that a complainant is not a judgment creditor, there is no longer room for doubting the jurisdiction of a federal court of

equity to appoint a receiver. Metropolitan Railroad Receivership, 208 U. S. 90, 28 Sup. Ct. 219, 52 L. Ed. 403; Cook on Corporations (6th Ed.) §.863; Tompkins v. Catawba Mills (C. C.) 82 Fed. 780. The allegations in the bill that the defendant could not pay its current obligations as they matured, and that it was unable in the ordinary course of its business to pay its existing and enforccable liabilities, was a proper and sufficient allegation of insolvency. Brouwer v. Harbeck, 9 N. Y. 593; 16 American & English Ency. of Law, 636; Buchanan v. Smith, 16 Wall. 277, 21 L. Ed. 280; Herrick v. Borst, 4 Hill (N. Y.) 652.

"Insolvency," as the term is used in equity, is clearly differentiated from the meaning which is given it by the bankruptcy act. It is insisted by claimants: That the receivers stand solely in the shoes of the insolvent corporation, which could not dispute the validity of its pledges; that such receivers were appointed to protect and conserve the property of the defendant; but that they are entirely devoid of the relation to the general creditors that a trustee in bankruptcy occupies, and therefore cannot urge the invalidity of the warehouse receipts. But this is not a tenable proposition. The cases cited by counsel for complainants are not applicable to the facts under consideration. The receivers herein were appointed not merely to preserve and protect the property of the defendant during the pendency of the action, but were charged with such additional powers and duties as a court of chancery may specially confer upon them. It is true that a receiver takes the property subject to all valid liens, and in matters of title represents the corporation; but there is an exception to this rule. Such is not only the law of this state as announced in Pittsburg Carbon Company v. McMillin, as Receiver, 119 N. Y. 46, 23 N. E. 530, 7 L. R. A. 46, but in Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779, the Supreme Court applied the doctrine in an action wherein a receiver was appointed of a national banking institution. In the case of Pittsburg Carbon Company v. McMillin, supra, it was claimed that the receiver occupies no different position than that of the corporation whom he represents. The court, by Andrews, J., says:

"The receiver unites in himself the right of the trust combination, and also the right of creditors, and that he may assert a claim as the representative of creditors, which he might be unable to assert as a representative of the combination merely. The general rule is well established that a receiver takes the title of the corporation or individual whose receiver he is, and that any defense which would have been good against the former may be asserted against the latter; but there is a recognized exception, which permits a receiver of an insolvent individual or corporation, in the interest of creditors, to disaffirm dealings of the debtor in fraud of their rights."

And in U. S. v. Church of Jesus Christ, 5 Utah, 538, 18 Pac. 35, it was held that a receiver may resist an illegal assignment as to creditors of a corporation made before the dissolution. See, also, Beach on Equity, vol. 2, § 945; Citizens' Bank & Trust Co. v. Union Mining & Gold Co. (C. C.) 106 Fed. 97; Gluck & Becker on Receivers of Corporations, p. 2.

In Hewit v. Berlin Machine Works, 194 U. S. 296, 24 Sup. Ct. 690, 48 L. Ed. 986, the court had before it a contract of a conditional sale,

which, according to the statute of this state, is not void as to creditors. The court said:

"A lien which is good against the bankrupt and as to all its creditors is good against the trustee."

The language quoted emphasizes the view that a trustee in bankruptcy may urge that a lien is not valid against a bankrupt. Certainly this principle applies to a receiver charged with the responsibility of winding up the affairs of a corporation and making equitable distribution among the creditors. The possession and control by the receivers of the property of the insolvent corporation estopped the recovery of judgment liens against the property by creditors, and it would indeed be an astonishing proposition that the receivers cannot in behalf of the creditors assert the illegality of the pledges in controversy. See, also, Savings & Trust Company v. Bear Valley (C. C.) 93 Fed. 339; Mercantile Trust Co. v. Southern Co., 86 Fed. 711, 30 C. C. A. 349; Gutterson v. Gould (C. C.) 151 Fed. 72.

The next question was whether there was an actual or constructive transfer of the property to the warehousing company by the defendant. The proofs show that the warehousing company leased in writing of the defendant its three warehouses. Under the contract the defendant was to deliver at the factories to the warehousing company all the canned goods therein contained, and it was to have a first lien upon all such goods, whether covered by the warehouse receipts or not. A custodian was employed, who, however, was also the superintendent of the preserving company, and who was to receive for his services as custodian the sum of $200 per month. The custodian, Wode, swore that a check for the said amount was regularly received by him, but that pursuant to previous arrangement with the defendant he indorsed the said checks over to the defendant, and no compensation was retained by him for his said services as custodian.

In explaining his duties as custodian he says that he commonly made requisitions in behalf of the defendant upon the warehousing company to issue warehouse receipts covering the property and made weekly reports of his transactions to the warehousing company showing that the goods specified in his requisition were in storage at one of the factories. Later the different warehouse receipts were on delivery indorsed by the defendant and negotiated with the claimants. There was a mingling of the pledged and unpledged goods at the factories; but the specified stock for which warehouse receipts were issued was not at any time reduced below the quantity indicated in such receipts or in the filed reports of the custodian. The custodian visited some one of the factories almost daily, except the factory at Model City, which he visited about once every month. The employés at the factories were under his charge and direction solely as superintendent of the defendant, and not as custodian. He testified that before issuing a requisition for a warehouse receipt he would communicate with the factories to ascertain from an employé of the defendant whether a certain quantity and kind of canned goods were in storage. None of the said goods were set aside or segregated from what had not been pledged. No marks or tags to give notice of the pledge were affixed

to the goods or building in which they were contained, save as indicated in the following excerpt from his testimony:

"Q. Now, in any of the cases covered by these requisitions, did you put any mark on the goods alleged to be covered by those papers, indicating to whom they belonged, or whether they were set apart, pursuant to these papers, or any other? A. Why, I did occasionally, but not very often; no. Occasionally I simply put a little board on there and say 'A. W.,' which happened to be my initials, 'Adam Wode,' as well as the American Warehousing Company's initials, and I did not think it necessary, and did not want to make any great display on account of employés, etc., so I did not put any designating mark on them as a general thing; no. And when I did put this mark on, 'A. W.,' it did not indicate the number of cases of the kind that I intended to be covered by it. So that in all cases referred to in my direct testimony there was no physical change of the goods after receiving the papers and sending them in to the warehousing company; no change after that. They were left in the same position they were before, exactly."

True, after the receivers were appointed, tags and marks were placed by the warehousing company upon a portion of the pledged property; but such belated action is now unavailing. The good faith of the claimants in negotiating the warehouse receipts or in loaning the money to the defendant is not entitled to much weight, if in fact there was no actual or constructive delivery of the property pledged. The mere intention to comply with the essence of a pledge or a negotiable warehouse receipt is insufficient. Hook v. Ayers, 80 Fed. 978, 26 C. C. A. 287. For it is quite well settled that the requirements of the general law oblige the pledgee to give reasonable notice to third parties that the ostensible ownership of the property pledged is in him; and, moreover, to obey its legal requirements he must resort to such reasonable means as the circumstances demand in order to give to third parties such information.

In the case at bar the pledgor did not surrender the possession of the property pledged in such a way as to acquaint others with whom it dealt as to the real possessor of the property. The adjudications hold that a pledgee must take and maintain an open, exclusive, and unequivocal possession. Security Warehousing Co. v. Hand, 143 Fed. 32, 74 C. C. A. 186, affirmed 206 U. S. 415, 27 Sup. Ct. 720, 51 L. Ed. 1117. In the cases cited by counsel for claimants the facts to show delivery of the property pledged were palpably stronger than here. It is not required that there should be a transference from one locality to another; but where a constructive delivery is relied upon there must be more than a mere "semblance of an attempt at such change of possession." In Bush v. Export Storage Co. (C. C.) 136 Fed. 918, the property pledged was inclosed separate from other property of a similar kind and marked off by placards and other indicia to indicate possession in the Warehousing Company. In Love v. Export Storage Co., 143 Fed. 1, 74 C. C. A. 155, a conspicuous placard was attached to the fence surrounding the pledged lumber, giving notice of possession by the storage company. So, also, in Union Trust Co. v. Wilson, 198 U. S. 535, 25 Sup. Ct. 766, 49 L. Ed. 1154, the facts indubitably disclosed possession in the trust company. In Philadelphia Warehouse Co. v. Winchester (C. C.) 156 Fed. 600, there were signs and placards placed by the warehouse company on the leased premises in such a way as to attract the attention of persons of ordinary intel-

ligence and of such creditors and others as were likely to visit the leas-
ed premises. In re Rodgers, 125 Fed. 169, 60 C. C. A. 567, a case re-
lied upon by the receivers in support of their contention, signs were
placed on the walls of separate floors of the building showing that the
storage company was in possession of the premises; but there were no
notices on the outside. The court said that the signs were obscure
and not readily observed, and, as the pledged property remained in the
possession of the bankrupt and under his control, the court believed
that the entire arrangement was a device to enable the bankrupt to
borrow money upon secret liens. In Security Warehousing Co. v.
Hand, supra, the Supreme Court, speaking of the changed possession
of the property in that case, emphasized the fact that no signs were
displayed to the passers-by, and held that, unless there is delivery, the
warehouse receipts are not entitled to pass as negotiable instruments.
In that case the question arose under the warehousing statute of the
state of Wisconsin that warehouse receipts should represent property
stored in a public warehouse.

Although under the warehousing act of this state it is not required
that the property pledged should be stored in a public warehouse, nev-
ertheless the principle laid down in the Hand Case relating to the de-
livery and change of possession of pledged property or the negotia-
bility of a warehouse receipt is applicable to the case at hand. I am
convinced that, where an arrangement existed between the parties by
which the pledged property was to remain under the control of the
bailor, conspicuous notice showing the actual relations of the contract·
ing parties is required, so that it would not be supposed by persons
dealing with the bailor that the property was secretly incumbered. The
defendant was given permission by the warehouseman to sell the
pledged property subject to its replacing the goods sold with others.
From the repayment by the defendant to the warehousing company
of the monthly wages paid to the custodian the inference would seem
to be warranted that the claimed delivery of the property to the custo-
dian was scarcely such as the law contemplates to effectuate a change
of possession to constitute a valid lien against creditors.

The evidence in its entirety is open to the impression that the pre-
serving company was desirous of concealing the true ownership of
the canned goods without imparting to the public the actual situation.
That the premises were leased for one year to the warehousing compa-
ny, and said lease recorded in the office of the clerk of the county
where the property was stored, is unimportant. The statute does not
require such recording, and consequently to do so voluntarily cannot
be considered as a notice to creditors of the liens or of change of pos-
session from the preserving company to the warehousing company.
A person dealing with the defendant or extending credit to it is not
required to first examine the records to ascertain if the premises and
the factory under its control and wherein it daily conducts its busi-
ness had not been leased to another. This is not a case where the ti-
tle has been transferred to the creditor and the property sold by the
debtor for his benefit. The property was sold from time to time by
the defendant, who in each instance substituted other property of a
like kind for that sold.

171 F.—35

This is a case where the essential elements of the pledge failed, in that the pledgee never parted with the possession of the property. It is not intended to hold that property pledged as collateral security may not be stored by the pledgee at such place as he selects, or that the warehousing company cannot designate as custodian an employé of the pledgor; but, where the possession in the pledgee is claimed to be constructive, to give negotiability to a warehouse receipt the acts of the parties must clearly point to it, and not leave the transaction open to the impression that the pledge was false or fictitious. If delivery is effected by storing the property in the warehouse of the pledgor under an agreement that the warehouseman shall for his convenience store it therein, then all the more reason why the warehouseman should give reasonable notice of his lien. In such circumstances the pledged property should be segregated from the unpledged and proper notice posted evidencing the lien. In short, the acts of the warehousing company must be such that it may reasonably be perceived that it has power and control over the property.

In the present case a constructive delivery certainly was not impossible of performance; but in the essential requirements of a valid pledge or a negotiable warehouse receipt there has not been such compliance with the law as the situation and circumstances demanded. The contention that a large sum of money was advanced in good faith to the defendant in consideration of the supposed validity of the pledge and warehouse receipts which increased its assets is without special force. There was nothing to prevent the acceptors of the warehouse receipts from legally protecting themselves, and, having omitted so to do, they can have no greater right than the general creditors. Casey v. Cavaroc, supra. The case of Parshall v. Eggert, 54 N. Y. 18, cited by the claimants, is not in conflict with the views herein expressed. In that case the identical property pledged to the bank came into its possession before the sheriff made a seizure under an attachment at the instance of an intermediate creditor.

No equitable lien enforceable against the receivers was created in favor of the claimants by the transaction under consideration. As the essential elements of a pledge must be perfected by delivery of the property to the pledgee, no equities can be invoked against the general creditors where such element is absent, and where the property was not mixed beyond tracing or identification. Quoting from Mr. Justice Bradley in Casey v. Cavaroc, supra:

"Equity will not regard that as done which has not been done, when it would injure third parties who have sustained detriment and acquired rights by the acts that are done."

It has been fairly established by the undisputed evidence that the warehouse receipts indorsed by the defendant to Arbuthnot, Latham & Co. and the New York County National Bank were constructively fraudulent as to creditors of the insolvent corporation, and that the indebtedness arising from such warehouse receipts are not entitled to priority of payment by the receivers. Moreover, under section 67 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449]), a lien not valid against general creditors for want of recording or for other reasons cannot remain effectual or subsisting

against the trustee of the bankrupt or a receiver representing such creditors. So here an equitable lien does not exist where the parties omit an essential element of the pledge or lien resulting in secretly incumbering the property.

In re the claims of Heinrich Donner and Ladenburg, Thalmann & Co., the material facts are substantially as follows: It was the custom of the defendant corporation to have its notes discounted by claimants, and at each time to execute a writing purporting to warehouse a certain amount of its product with one Sheridan, who was its treasurer, and who forwarded the receipts specifying the amount and character of the canned goods to the claimants. In the course of dealing, receipts which had been negotiated by claimants were surrendered from time to time; but Sheridan replaced them by others covering goods of similar brand and grade to protect the defendant's renewal drafts. Sheridan was not an independent warehouseman. The evidence discloses that the goods specified in the documents were not set apart or marked to indicate that a lien had been placed on them. Before issuing a warehouse receipt, Sheridan testifies that he invariably examined the books of the defendant to satisfy himself that the goods were in the warehouse. Such a supposititious delivery certainly was not sufficient to give negotiability to the warehouse receipts.

As a "warehouseman" concededly is a person who receives goods and merchandise to be stored in his warehouse for hire, it is manifest that Sheridan does not come within this definition. The authorities hold that, to entitle claimants to a lien upon the property specified in the documents purporting to be warehouse receipts, it must be shown that such receipts or documents were issued by one engaged in the business of warehousing. Yenni v. McNamee, 45 N. Y. 614; Farmers' & Mechanics' Nat. Bank v. Lang, 87 N. Y. 209; Franklin National Bank v. Whitehead, 149 Ind. 560, 49 N. E. 592, 39 L. R. A. 725, 63 Am. St. Rep. 302. The purported warehouse receipts, in view of the evidential facts, cannot operate as a parting of possession by delivering the property to Sheridan either as bailee or custodian for the bailee. In form there is a pledge of the property with the claimants as collateral security; but such receipt in my judgment cannot be given any other or different effect than as a security for the payment of the amount loaned upon it. The document was, I think, a mere pledge unaccompanied by delivery or mortgage covering the property, and was void for lack of filing in compliance with the statute. Yenni v. McNamee, supra; Siedenbach v. Riley, 111 N. Y. 567, 19 N. E. 275; Willets v. Hatch, 132 N. Y. 46, 30 N. E. 251, 17 L. R. A. 193. Nor can the claimants have declared an equitable lien upon the canned goods, inasmuch as any right which they had in the property as hereinbefore stated could not affect the general creditors in view of the situation after the defendant's insolvency and the appointment of receivers. See, also, 1 Pomeroy, Eq. Jur. § 165; Seymour v. Falls, etc., 25 Barb. (N. Y.) 281; Peck v. Jenness, 7 How. 620, 12 L. Ed. 841. It is true that possession is not essential to the existence of an equitable lien; but the rule is different where it appears, as here, that the property claimed to have been pledged was mixed with the unpledged, or that it was disposed of in such a way that it cannot be traced or

identified. Person v. Oberteuffer, 59 How. Prac. (N. Y.) 293; Allen v. Loring, 34 Iowa, 499; Mervin on Eq. & Eq. Pleading, § 716; Lighthouse v. Third Nat. Bank, 162 N. Y. 336, 56 N. E. 738.

It was contended at the hearing that, as the American Warehousing Company had a lease of the premises and consented to the storage in question, the mere issuance of the document was a delivery of the property therein specified, and that Sheridan assumed possession as bailee. In support of this contention Union Trust Co. v. Wilson, 198 U. S. 530, 25 Sup. Ct. 766, 49 L. Ed. 1154, is cited by claimants; but in that case it appears that the bailor separated the goods and walled off the part of his store wherein the goods were stored and which had been let by him to the warehouse company. The warehouse company alone had access to the storage part of the premises, and conspicuous signs indicating its occupancy and possession of the goods were posted. According to the Supreme Court, this was a real delivery to the same extent as if the goods had been removed to another warehouse at the instance of the pledgee.

Importance is also attached to the claim that no actual intention to defraud creditors is shown, that no claimants parted with their money in good faith believing the warehouse receipts and the property therein specified to have legally come into their possession; but, if I am correct in my view of the elicited facts, the transaction as hereinbefore indicated was presumptively fraudulent as against creditors. The case of Niagara County National Bank v. Lord, 33 Hun (N. Y.) 557, is not in point. There the pledgor removed from storage a portion of the property pledged without the consent of the pledgee, and upon hearing of the removal the latter assumed sole control and custody of the property. Unquestionably this act of the bank was a taking of the property into its possession, and as the transfer was in good faith, and rights of other creditors not having intervened, the original intention of the parties was effectuated, even though the possession was taken by the bank subsequent to the issuance of the warehouse receipts.

The exceptions to the report of the special master in re the claims of Arbuthnot, Latham & Co., the New York County National Bank, Conrad Heinrich Donner, and Ladenburg, Thalmann & Co., are sustained.