The Gogebic Investment Company, Appellant, vs. The Iron Chief Mining Company and others, Respondents.

*December 16, 1890 — January 13, 1891.*

*Corporations: Liability of stockholders: Pleading.*

| 78 | 427 |
|----|-----|
| 111 | ²649 |
| 111 | ²650 |

| 78 | 427 |
|----|-----|
| 53 LRA | 138 |

1. Subscribers to the capital stock of a corporation to whom their stock has been issued upon payment of less than the par value thereof, may be compelled to make further payment thereon, up to such par value, for the benefit of creditors of the corporation.

2. In an action by a creditor to enforce such liability of subscribers to the stock of a mining corporation, a complaint alleging that they had received their stock in payment for certain mining rights which they knew to be worth much less than the par value of the stock, need not further allege that the plaintiff gave credit to the corporation in the belief that full value had been paid for the stock.

> The plaintiff's knowledge, when the debt was incurred, of the consideration upon which the stock was issued, if it will defeat the action, is in the nature of an estoppel, and need not be negatived in the complaint.

APPEAL from the Circuit Court for *Milwaukee* County. The case is sufficiently stated in the opinion.

For the appellant there was a brief by *Turner & Timlin*, and oral argument by *W. J. Turner*. The question on the demurrer was, merely, Are the subscribers to the capital stock liable to creditors, it not being alleged that the stock was issued fraudulently? But it is alleged that they were the officers, promoters, and directors of the corporation, and the owners of the property taken in payment for the stock; that they *knew* the property to be worth less than $18,000, and yet they attempted to pay therewith their subscription for a million dollars of the capital stock. This is an allegation of fraud, by averring the acts which in law constitute fraud; and it would add nothing to those averments of fact to modify them by the adverb "fraudulently." Taylor, Corp. sec. 702; *Douglass v. Ireland*, 73 N. Y. 100, 105; *Osgood v. King*, 42 Iowa, 478; *Wetherbee v. Baker*, 35 N. J. Eq. 501, 513; *Thompson v. Reno S. Bank*, 3 Am. St. Rep. 797, 808, note; *Marston v. Dresen*, 76 Wis. 418; Cook, Stock, sec. 34. The complaint states a good cause of action within the rule of *Whitehill v. Jacobs*, 75 Wis. 474. Because the corporation did business before twenty per cent. of the capital stock had been paid in, therefore the defendants are liable for the debts of the concern, under sec. 1773, R. S. Thompson, Liab. of Stockh. sec. 38; *Matthews v. Albert*, 24 Md. 527; *Norris v. Johnson*, 34 id. 485; *Booth v. Campbell*, 37 id. 522. The fact that the plaintiff, at the time it gave the credit, knew of the manner in which the stock was paid for, is defensive, like any other matter that arises as an estoppel *in pais*. *Gill v. Rice*, 13 Wis. 549; *Warder v. Baldwin*, 51 id. 450.

The Gogebic Investment Co. vs. The Iron Chief Mining Co. and others.

For the respondents *Herman Nunnemacher*, *Robert Nunnemacher*, and *H. M. Benjamin* there was a brief by *Williams, Friend & Bright*, and oral argument by *A. H. Bright*. To maintain this action actual fraud must be alleged and proved. *Coit v. Gold A. Co.* 119 U. S. 343. Fraud must be made a distinct allegation in the complaint so as to be put in issue. *Voorhees v. Bonesteel*, 16 Wall. 16; *Patton v. Taylor*, 7 How. 132; *Noonan v. Lee*, 2 Black, 508; *Moore v. Greene*, 19 How. 69; *Beaubien v. Beaubien*, 23 id. 190; *Magniac v. Thompson*, 15 id. 281; *S. C.* 2 Wall. Jr. 209; *Eyre v. Potter*, 15 How. 42; *Fisher v. Boody*, 1 Curtis, 206. The plaintiff must also show that he gave credit to the corporation in the belief that its stock was fully paid. *Whitehill v. Jacobs*, 75 Wis. 474; *Coit v. Gold A. Co.* 119 U. S. 343; *Van Trott v. Wiese*, 36 Wis. 439; *Mumlock v. Fairbank*, 46 id. 415; *Simon v. Cotzhausen*, 47 id. 103; *Ward v. Borkenhagen,* 50 id. 459. In the case of mining corporations the transaction which is the subject of complaint in this case is so universal and notorious that "a person who contracts with an ordinary mining company may usually be presumed to have contracted with a view only to such security as the property transferred to the company may furnish, irrespective of the capital indicated by the charter. A person so contracting would therefore have no equitable claim against the shareholders of unpaid capital if their shares were declared paid up as between themselves and the company." Morawetz, Corp. sec. 830; *In re South Mountain C. M. Co.* 7 Sawy. 30; *S. C.* 8 id. 366.

Taylor, J. This is an appeal from an order sustaining a demurrer to the complaint of the plaintiff in the action. The complaint is intended to set up a cause of action under secs. 3216, 3217, 3219, 3221, 3224, 3226, R. S. The complaint sets forth the fact that the plaintiff is a judgment creditor of the defendant corporation; that execution upon its judg-

ment has been duly issued and returned unsatisfied. It also alleges that the corporation is insolvent and unable to pay its debts. The complaint then alleges that *Herman Nunnemacher, Robert Nunnemacher*, and *H. M. Benjamin* are stockholders of said defendant company, and sets forth facts which show that they have not paid for their stock its full and fair value, as required by law, so as to relieve them from contributing further to the payment of the debts of said company.

It is not seriously contended by the learned counsel for the respondents that the complaint does not state facts sufficient to show that these defendants are stockholders of said corporation, and that as between them and the creditors of said corporation they would be liable to make further payment upon the stock held by them to satisfy the debts of said insolvent corporation, but it is claimed that because it is alleged in the complaint that these stockholders obtained their stock from the corporation as full-paid stock as the purchase price paid by said corporation for certain mining rights sold to said corporation by said stockholders, the plaintiff does not make out a case against these stockholders, notwithstanding its allegations show that the property transferred to said corporation was not in fact worth one tenth part of the par value of said shares of stock so received by them in exchange therefor, and that such fact was well known to said stockholders at the time they received their shares of stock therefor, unless the plaintiff makes the further allegation that at the time it gave credit to said corporation it was ignorant of the fact as to how said defendants had obtained their shares of stock, and that, relying upon and believing that they had paid full value for their shares of stock, it gave credit to said corporation. The claim is that the same rule of pleading is applicable to the case at bar as is applicable to an action to recover damages of a defendant for obtaining goods from

the plaintiff by false and fraudulent representations made by the defendant for the purpose of obtaining such goods, and that in such case the plaintiff must allege that the representations were false to the defendant's knowledge, and that the plaintiff relied upon them as true, and gave the credit or made the purchase relying upon the truth of such representations.

We do not think the cases are at all analogous. The case at bar is in the nature of a bill in equity to subject to the payment of debts the property of the defendant, which it has conveyed under such circumstances as the law declares to be fraudulent as against its creditors. In an action against the stockholders of a corporation to compel them to contribute to the payment of the debts of the insolvent corporation it is only necessary, in order to make out a *prima facie* case, to establish the fact that the stockholder has not in good faith paid the par value for his stock to the corporation.

The nature of the stockholder's liability to the creditors of the corporation, when such corporation is bankrupt, is well stated in the cases of *Upton v. Tribilcock*, 91 U. S. 47, and *Sanger v. Upton*, 91 U. S. 60. In the case first cited the court say: "The capital stock of a moneyed corporation is a fund for the payment of its debts. It is a trust fund, of which the directors are the trustees. It is a trust to be managed for the benefit of its shareholders during its life, and for the benefit of its creditors in the event of its dissolution. This duty is a sacred one, and cannot be disregarded. Its violation will not be undertaken by any just-minded man, and will not be permitted by the courts. The idea that the capital of a corporation is a foot-ball, to be thrown into the market for the purpose of speculation, that its value may be elevated or depressed to advance the interests of its managers, is a modern and wicked invention. Equally unsound is the opinion that the obligation of a sub-

scriber to pay his subscription may be released or surrendered to him by the trustees of the company. This has been often attempted, but never successfully. The capital paid in, or promised to be paid in, is a fund which the trustees cannot squander or give away. They are bound to call in what is unpaid, and carefully husband it when received." In the second case cited the court say: "The capital stock of an incorporated company is a fund set apart for the payment of its debts. It is a substitute for the personal liability which subsists in private copartnerships. When debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied otherwise than upon their demands, until such demands are satisfied. The creditors have a lien upon it in equity. If diverted they may follow it as far as it can be traced, and subject it to the payment of their claims, except as against holders who have taken it *bona fide*, for a valuable consideration and without notice. It is publicly pledged to those who deal with the corporation for their security. Unpaid stock is as much a part of this pledge and as much a part of the assets of the company as the cash which has been paid in upon it. Creditors have the same right to look to it as to anything else, and the same right to insist upon its payment as upon the payment of any other debt of the company. As regards creditors there is no distinction between such a demand and any other asset which may form a part of the property and effects of the corporation."

.Under the rule stated in these opinions, that the capital stock of a corporation is an asset of the corporation, held in trust for the benefit of the corporation and of its creditors when bankrupt, it follows logically that when the corporation disposes of this stock for a wholly inadequate consideration, it is as much a fraud upon the creditors of the corporation as though the corporation had disposed of any of its other debts due to the corporation for a wholly

inadequate consideration. It differs from the other tangible assets of the corporation, as between the creditors of the corporation and the stockholders, in this, that when the tangible assets of the corporation are fraudulently conveyed, the creditor can only take the property so conveyed in satisfaction of his debt, but cannot compel the fraudulent vendee to pay the creditor's debt unless he has disposed of the property fraudulently received by him, and in that event he must account for what he has received for it, or for its fair value; but the fraudulent holder of stock, under the common law and under our statute, becomes liable to the creditors for the par value of the stock, less what he has paid for it to the corporation. The law makes the fraudulent holder of stock, so far as creditors are concerned, a debtor to the company for its par value, and as to creditors he cannot relieve himself of this obligation until the debts of the corporation are paid. Under secs. 1753, 1758, R. S., which are not, perhaps, materially different from the common law, the subscriber for stock of a corporation, whether he is to pay for it in money or in property, impliedly agrees to pay its par value therefor, and, so far as creditors of the corporation are concerned, the trustees of the corporation cannot release him from that obligation.

In the case at bar the facts stated in the complaint show that nearly all the capital stock of the corporation was issued and delivered to the stockholders named in the complaint for a nominal consideration, and the presumption of the law is that such a transfer of the stock is a fraud upon the creditors of the corporation, and that as to such creditors the parties to whom the stock was issued must be held liable to a further payment upon their stock to the par value thereof if it be necessary to make such further payment to satisfy the debts of the corporation. The allegations of the complaint, which are admitted to be true by the demurrer, show conclusively that the stockholder de-

fendants have not, as between themselves and the creditors, paid in full for their stock, and are therefore liable to make further payments for the benefit of the plaintiff as a creditor of the corporation. This is all that is necessary under our statute or at common law to make a case against the stockholder of unpaid stock in favor of a creditor of the insolvent corporation.

That the defendants may be able to defeat this claim of the creditor of the corporation, by showing that at the time his debt was incurred he knew that the stock of the corporation had all been issued in payment for property of a value very much less than the par value thereof, is a question which does not arise on this demurrer. Such a defense is in the nature of an estoppel upon the plaintiff, and need not be negatived in the complaint. All the cases cited by the learned counsel for the appellant to sustain his contention were cases arising upon the trial of the issues in the case, and not upon a demurrer to the pleading of the plaintiff.

*By the Court.*— The order appealed from is reversed, and the cause is remanded with directions to overrule the demurrer, and for further proceedings according to law.