HAMOR v. TAYLOR–RICE ENGINEERING CO.

(Circuit Court, D. Delaware. December 23, 1897.)

No. 187.

1. CORPORATIONS—CAPITAL STOCK—TRUST FUND.
The capital stock of a corporation is a trust fund for the payment of the corporate indebtedness, before any distribution among the stockholders.

2. SAME—CAPITAL STOCK DEFINED.
The capital stock of a corporation, in its merely nominal sense, is the sum specified in its charter or certificate of incorporation, and thereby usually divided into aliquot shares; and such sum is intended to represent in amount the corporate fund which is to serve as the basis for the business or enterprise for which the corporation was created.

3. SAME.
In its substantial sense, the capital stock of a corporation is the fund of money or other property, actually or potentially in its possession, directly or indirectly derived or to be derived from the sale by it of shares of its stock or their exchange by it for property other than money. This fund includes not only money or other property received by the corporation for shares of stock but all balances of purchase money, or instalments, due the corporation for shares of stock sold by it, and all unpaid subscriptions for shares.

4. SAME—DISPOSITION OF CAPITAL STOCK.
In the absence of statutory authority in that behalf a corporation, whether solvent or insolvent, has no legal power to reduce the fund represented by its capital stock by any formal or voluntary act on its part, to the prejudice of its creditors either then or thereafter existing, by distributing any part of it among the stockholders by way of dividend, or by giving any part of it to one or more stockholders, or by disposing of any part of it in any other manner, except by way of changing its form to meet the exigencies of the corporate business.

**5. SAME—PURCHASE OF STOCK—ULTRA VIRES.**

It is ultra vires of a corporation to dispose of any part of its property other than surplus or net profits for the purchase of shares of its own stock. and a promissory note given by the corporation for that purpose is a nullity.

**6. SAME—RECEIVERS.**

Receivers of an insolvent corporation represent both the corporation and its creditors and have the right to assert any defense to which the creditors, in contradistinction to the corporation, are entitled.

**7. SAME—BURDEN OF PROOF.**

Where a corporation gives its promissory note to one of its directors for the purchase of shares of its own stock from him, and within four months thereafter is adjudged insolvent, and has not sufficient assets for the payment of its debts, the burden rests upon the payee of the note who seeks to have it allowed as a claim against the corporation, if, in any event, the existence of a surplus or fund of net profits at the time of the giving of the note might avail him, to show the existence at that time of such surplus or profits.

(Syllabus by the Court.)

This was a suit in equity by John M. Hamor against the Taylor-Rice Engineering Company. The cause was heard on the exceptions of the receivers of the defendant company to a claim against it, filed by Dwight D. Willard.

Levi C. Bird, for Willard.
William S. Hilles, for receivers.

BRADFORD, District Judge. An order having been made in this cause notifying all creditors of the defendant to prove their claims and file the same in this court, Dwight D. Willard filed with the clerk, December 2, 1896, a verified claim amounting to $2200, with interest thereon from June 22, 1896, based upon a promissory note made by the defendant to his order for the above mentioned sum, bearing date March 19, 1896, and payable three months after date. The receivers of the defendant excepted to the allowance of the claim, as follows:

"As to the claim of Dwight D. Willard, being No. 25, these receivers deny that there is any obligation whatsoever on the part of the said company, the said claim being on a note made by the company to the order of Dwight D. Willard, the consideration for which said note, as these receivers are informed and believe, being the amount agreed to be paid by the said company to the said Dwight D. Willard in purchasing from him stock of the said company, which transaction and the giving of which note these receivers claim was ultra vires so far as the corporation was concerned and not within the power of said company."

The solicitors for Willard and the receivers, agreeing that the exception to the said claim should be determined by the court without the intervention of a master, filed an agreed statement of facts, upon which argument has been heard. The facts so stated are as follows:

"The Taylor-Rice Engineering Company is a corporation duly created by and existing under the laws of the state of Delaware, said corporation having been formed and organized under an act entitled, 'An Act concerning Private Corporations,' passed at Dover, March 14th, 1883. It is agreed that the certificate of incorporation of the said corporation shall be taken as part of this case stated. That the said company, on the 19th day of December, A. D. 1895, gave to the said Dwight D. Willard a certain promissory note, of which the following is a copy:

'$2200.                                    Wilmington, Del., December 19, 1895.

Three months after date we promise to pay to the order of Dwight D. Willard, at the First National Bank of Wilmington, two thousand two hundred dollars, without defalcation, for value received.

                                            'The Taylor-Rice Engineering Co.
                                            'Jas. A. Taylor, Prest.

'Edmund Wright, Jr., Treasurer.'

That the said note was renewed for three months on the 19th day of March, A. D. 1896, which said renewed note is the basis of the claim of the said Dwight D. Willard against the said receivers. That at the time of the first of the said notes was given, the said Dwight D. Willard was a director of The Taylor-Rice Engineering Company. That said note was given to the said Dwight D. Willard by the said company in part payment of thirty shares of the capital stock of the said company of the par value of one hundred dollars each, and that the said Dwight D. Willard, upon the receipt of the said note and $500 in cash paid by the said company, surrendered or was to surrender to the said company the said stock. That the said transaction above set forth was authorized by a meeting of the board of directors of the said company, held shortly before the said note was given. That at the time said note was given and when the said resolution was passed, said corporation was indebted to various persons in considerable sums of money, the greater portion of which is still due and unpaid; but the said corporation in the opinion of the said directors was in a solvent condition. That at the time of the giving of the said note, the greater portion of the stock was owned by the directors of the said company, then consisting of James A. Taylor, John V. Rice, Junior, Edmund Wright, John M. Rogers and the said Dwight D. Willard. That the said board of directors thought that said corporation was solvent and that it was then possible to carry on the business of the said company, and to pay the obligations of the said company, together with the note of the said Willard. That on the 17th day of April, A. D. 1896, and before the maturity of the renewal of said note, the said James P. Winchester and James A. Taylor, were appointed by the circuit court of the United States for the district of Delaware, receivers of the said company, by reason of the insolvency thereof, and that there are not sufficient funds or property in the hands of the said receivers to pay the indebtedness against the said company, exclusive of the claim of the said Dwight D. Willard. That nine tenths or more of the stock of the corporation was owned by the directors, who, at a meeting of the board of directors, authorized the purchase of the said stock and the giving of the said promissory note. The aggregate merchandise accounts against the corporation presented to the receivers, now aggregate $1475.92, nearly all of which, to wit, $1137.93, was contracted by the corporation after the note was given to Willard in purchase of his stock, and the balance of the indebtedness other than the Willard note, to wit, $6692.35, is to James A. Taylor, the president and a director of said corporation, and to John M. Rogers, a director of said corporation, who, as directors, agreed to the purchase of the stock from Willard, and who directed the corporation to give the said promissory note. That the directors who agreed to the purchase of said stock and giving of said promissory note, at the time of the giving of said promissory note, took said action because they believed it to be for the best interests of the corporation in a financial point of view. Taylor's account was for salary due from the corporation and Rogers' claim was for money loaned to the corporation, the Rogers account having been incurred long previous to the purchase of the Willard stock and part of the Taylor salary earned before that time. That the receivers object to paying the said note on the ground that the giving thereof was not within the power of the said company, and was void as against the other creditors thereof."

The defendant was incorporated in September, 1894, under the general incorporation law of Delaware, chapter 147, vol. 17, Laws Del. 1883, with power "to manufacture and sell engines of all kinds, and all appliances pertaining thereto, machinery, tools, tools of precision for

measurements, and all other tools and machinery whatsoever." The capital stock authorized in the certificate of incorporation was $55,000, divided into 550 shares of the par value of $100 each, it being required that $35,000 should be paid in before commencing business. Subsequently, by a supplemental certificate obtained in February, 1895, the authorized capital stock of the defendant was increased to $750,000, divided into preferred and common stock, the former amounting to $250,000 and the latter to $500,000; the par value of shares in each being $100. It does not appear whether the stock which the defendant undertook to purchase from Willard was part of its original authorized capital stock, or whether it was common or preferred stock issued under the supplemental certificate. Nor does the statement of facts specifically disclose the circumstances under which, or the purposes for which, the defendant undertook to purchase its stock from Willard; nor does it appear whether the defendant at the time of making the first note had a surplus, or a fund of net profits, nor whether it was then solvent or insolvent, or, if then solvent, whether the value of its assets was in excess of the par value of its capital stock issued under or authorized by its charter.

There are few, if any, doctrines more firmly rooted in our jurisprudence than that the capital stock of a corporation is a trust fund for the payment of the corporate indebtedness, before any distribution among the stockholders. In Upton v. Tribilcock, 91 U. S. 45, 47, the court said:

"The capital stock of a moneyed corporation is a fund for the payment of its debts. It is a trust fund, of which the directors are the trustees. It is a trust to be managed for the benefit of its shareholders during its life, and for the benefit of its creditors in the event of its dissolution. This duty is a sacred one, and cannot be disregarded. Its violation will not be undertaken by any just minded man, and will not be permitted by the courts. * * * The capital paid in, and promised to be paid in, is a fund which the trustees cannot squander or give away."

In Sanger v. Upton, 91 U. S. 56, 60, the court said:

"The capital stock of an incorporated company is a fund set apart for the payment of its debts. It is a substitute for the personal liability which subsists in private copartnerships. When debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied, otherwise than upon their demands, until such demands are satisfied. The creditors have a lien upon it in equity. If diverted, they may follow it as far as it can be traced, and subject it to the payment of their claims, except as against holders who have taken it bona fide for a valuable consideration and without notice. It is publicly pledged to those who deal with the corporation, for their security."

In Crandall v. Lincoln, 52 Conn. 73, 94, the court said:

"The stock of a corporation is its only basis of credit. Unlike a partnership, its members generally are not individually liable for its debts. The character, reputation and credit of its promoters do not attach to the corporation itself, except to a limited extent. Hence it is of vital importance that the law should rigidly guard and protect the capital stock. Otherwise, especially in these days when so large a portion of the business of the country is carried on by corporations, confidence, on which the prosperity of the country largely depends, would be seriously impaired. Hence it is that in equity the capital stock of a corporation is now regarded as a trust fund for the payment of debts. The creditors have a lien upon it, which is prior in point

of right to any claim which the stockholders as such can have upon it; and courts will be astute to detect and defeat any scheme or devise which is calculated to withdraw this fund or in any way to place it beyond the reach of creditors."

The capital stock of a corporation, in its merely nominal sense, is the sum specified or authorized in its charter or certificate of incorporation, and thereby usually divided into aliquot shares; and such sum is intended to represent in amount the corporate fund which is to serve as the basis for the business or enterprise for which the corporation was created. In its substantial sense, the capital stock of a corporation is the fund of money or other property, actually or potentially in its possession, derived or to be derived from the sale by it of shares of its stock or their exchange by it for property other than money. This fund includes not only money or other property received by the corporation for shares of stock but all balances of purchase money, or instalments, due the corporation for shares of stock sold by it, and all unpaid subscriptions for shares. Upton v. Tribilcock, 91 U. S. 45; Sanger v. Upton, Id. 56; Sawyer v. Hoag, 17 Wall. 610; Burke v. Smith, 16 Wall. 390, 395. The fund may through accident, shrinkage in values, or business misfortune, be impaired; but, subject to such contingencies, it is intended to, and should, be equal to the par value of the nominal capital stock which it represents. The public in dealing with a corporation has a right to assume that its capital is real, and not fictitious, and that it is equal, subject to such possible impairment, to the capital stock it purports to have and which it holds itself out to the public as possessing. The capital stock of a corporation widely differs in legal import from the aggregate shares into which it is divided by the charter. Farrington v. Tennessee, 95 U. S. 679, 686; People v. Coleman, 126 N. Y. 433, 437, 27 N. E. 818. While the former includes only the fund above described, the latter represent the totality of the corporate assets and property and, directly or indirectly, the management of the affairs of the corporation. The stockholders have the right, according to their amount of stock, to participate in dividends declared, to vote at stockholders' meetings, and on the dissolution of the corporation, after all corporate indebtedness has been paid, to share between them the remaining assets. A corporation may own property far in excess of its capital stock, or it may, with property less than its prescribed capital, be engaged in a very prosperous business, and in either case the value of the shares may in the aggregate be a multiple of the total capital stock. So, when the corporate assets are in excess of the capital stock, the shares, through unreasonable delay in declaring dividends or other mismanagement, may be less than par in value. The value of the shares in the hands of stockholders, therefore, is no criterion of the value of the capital stock. The latter does not include a surplus or net profits. A solvent corporation, with a surplus or a fund of net profits, may dispose of such surplus or profits for any legitimate purpose within the scope of its charter, whether expressed or fairly implied. And possibly an expenditure from such surplus or profits for the purpose of getting rid of a troublesome stockholder by buying his stock, with a view to its reissue for value, would be

proper. The case presented, however, does not call for a decision on this point.

But, whether a corporation be solvent or insolvent, the fund represented by its capital stock must remain inviolate for the protection of its creditors. In the absence of statutory authority in that behalf a corporation has no legal power to reduce this fund by any formal or voluntary act or contract on its part, to the prejudice of its creditors either then or thereafter existing, whether by distributing any part of it among the stockholders by way of dividend, or by giving any part of it to one or more stockholders, or by disposing of any part of it in any other manner, except by way of changing its form to meet the exigencies of the corporate business. Such an act or contract is ultra vires, not only of the directors or stockholders, but of the corporation itself. In Farrington v. Tennessee, 95 U. S. 679, 686, the court said:

"The capital stock is the money paid or authorized or required to be paid in as the basis of the business of the bank, and the means of conducting its operations. It represents whatever it may be invested in. If a large surplus be accumulated and laid by, that does not become a part of it. The amount authorized cannot be increased without proper legal authority. If there be losses which impair it, there can be no formal reduction without the like sanction. No power to increase or diminish it belongs inherently to the corporation. It is a trust fund, held by the corporation as a trustee."

In Burke v. Smith, 16 Wall. 390, 395, the court said:

"The stock subscribed is the capital of the company, its means for performing its duty to the commonwealth, and to those who deal with it. Accordingly, it has been settled by very numerous decisions that the directors of a company are incompetent to release an original subscriber to its capital stock, or to make any arrangement with him by which the company, its creditors, or the state shall lose any of the benefit of his subscription. Every such arrangement is regarded in equity, not merely as ultra vires, but as a fraud upon the other stockholders, upon the public, and upon the creditors of the company."

If a corporation be incompetent to release a subscriber to its capital stock, whose subscription has not been paid, it is equally without authority to expend the fund represented by its capital stock for the purchase of shares held by a stockholder who has paid for them. In either case the trust found for creditors is lessened, whatever may be the effect upon the interests of stockholders in the absence of any indebtedness. There are many decisions by the state courts, and some dicta in the opinions of the supreme court, which support the proposition, that a contract of a corporation, not contra bonos mores or involving malum in se or forbidden by the charter or any other law, and merely beyond the grant of corporate power, can be enforced against the corporation after it has been executed on the part of the plaintiff, notwithstanding the fact that the plaintiff at the time of entering into the contract was aware of the lack of corporate authority. But this doctrine has not been accepted by the supreme court. In Central Transp. Co. v. Pullman's Palace-Car Co., 139 U. S. 24, 48, 59, 11 Sup. Ct. 484. the court said:

"The charter of a corporation, read in the light of any general laws which are applicable, is the measure of its powers, and the enumeration of those powers implies the exclusion of all others not fairly incidental. All contracts made by a corporation beyond the scope of those powers are unlawful and void, and no action can be maintained upon them in the courts, and this upon

three distinct grounds: the obligation of every one contracting with the corporation, to take notice of the legal limits of its powers; the interest of the stockholders, not to be subjected to risks which they have never undertaken; and, above all, the interest of the public that the corporation shall not transcend the powers conferred upon it by law. * * * A contract of a corporation, which is ultra vires in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature, is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it."

The promissory note of March 19, 1896, on which Willard bases his claim, was given in renewal of a note for the same amount, between the same parties, made and delivered December 19, 1895. Whatever infirmity inhered in the original note attached to the renewal note. The consideration for the original note was the surrender by Willard to the defendant of certain shares of its capital stock held by him. He now seeks to be recognized as one of the creditors of the defendant. Was the money which the defendant undertook to pay him for his surrender of stock to come out of any surplus or fund of net profits, on the one hand, or, on the other, out of the fund represented by the capital stock? The defendant was adjudged insolvent and receivers were appointed within four months after the giving of the original note; and it is admitted that there are not sufficient funds or property in their hands to pay the corporate indebtedness, exclusive of the alleged claim of Willard. In so far as the existence of a surplus or fund of net profits at the time of the taking of the original note might tend to the establishment of a right on his part to compete with the creditors of the defendant, the burden of proof rested upon him to show the existence of such surplus or profits. No such showing has been made; and it cannot be assumed that such was a fact. The note must be treated as an undertaking by the defendant to dispose of part of its capital stock to secure a surrender of Willard's shares. It was a contract to do what was ultra vires of the defendant, as against its creditors, and was a nullity; and, therefore, the note given in renewal is void.

The transaction in question was prohibited not only by the general principles of law applicable to corporations, but by the general incorporation act of Delaware. Section 11 provides that the certificate of incorporation shall set forth, among other things, "the amount of capital stock, the number and par value of shares, and the amount to be paid in before commencing business, which shall not be less than ten per cent. of the whole capital," and also "the value of real and personal estate of which the corporation may become seized and possessed." Section 7 provides:

"It shall not be lawful for the directors of any bank or moneyed or manufacturing corporation in this state, or any corporation created under this act, to make dividends, except from the surplus or net profits arising from the business of the corporation, nor to divide, withdraw, or in any way pay to the stockholders, or any of them, any part of the capital stock of the said corporation, or to reduce the said capital stock, except according to this act,

without the consent of the legislature; and, in case of any violation of the provisions of this section, the directors, under whose administration the same may happen, shall, in their individual capacities, jointly and severally, be liable at any time within the period of six years after paying any such dividends to the said corporation, and to the creditors thereof in the event of its dissolution or insolvency, to the full amount of the dividend made or capital stock so divided, withdrawn, paid out or reduced, with legal interest on the same from the time such liability accrued," &c.

The payment to stockholders of any part of the capital stock of a corporation to secure the surrender of its shares, which, on general principles, is ultra vires of the corporation, is by the above section expressly prohibited; and by that section, for the amount of money so paid, such directors as actually or impliedly take part in such illegal action are made liable to the corporation or its creditors. Willard was a director of the defendant at the time he took the original note, and the receivers represent both the corporation and its creditors. It is true that section 23 provides:

"If any incorporated company in this state shall purchase any of the stock of such company, or take the same in payment or satisfaction of any debt due to them, such stock shall not be voted, either directly or indirectly, at any election for directors of said company."

But no inference can justly be drawn from this provision that the corporation can, as against creditors, alienate any part of its capital stock for the purchase of shares thereof. The section is to be read in the light of the other provisions of the act. Corporations created under the act, in many instances, are authorized to and do own real and personal property in excess of their prescribed or authorized capital stock. They may have a surplus or a fund of net profits. It is possible that under certain circumstances a corporation may have legal power to buy shares of its own stock with its surplus or profits, such power being coupled with a legal duty on its part promptly to re-issue such shares for value. However this may be, it is clear that no power exists in a corporation, as against its creditors, to impair the fund, represented by its capital stock, by expending any portion of it in purchasing shares of its own stock.

It was urged in argument that the receivers represented the defendant, and that, if the circumstances of the case were such that it would have been precluded from denying the validity of the promissory notes, the receivers are equally precluded from so doing. But this position is untenable. The receivers, representing both the creditors and the defendant, have the right to assert any defense to which the creditors, in contradistinction to the defendant, are entitled. Carbon Co. v. McMillin, 119 N. Y. 46, 23 N. E. 530; Beach, Rec. § 671. The facts do not disclose any actual fraud or unfair dealing on the part of Willard. His intention may have been blameless. The law, however, did not sanction the transaction in which he engaged, and his alleged claim must, accordingly, be disallowed with costs.