THE STATE OF KANSAS, *Appellee,* v. ALVIN C. CHANCE, *Appellant.*

No. 16,309.

SYLLABUS BY THE COURT.

WORDS AND PHRASES—"*Moneyed Corporation*"—*Forgery*—*False Entries in Books of Account.* A company incorporated for the purpose of pecuniary profit, although having no power to engage in banking, or in loaning money, or in writing insurance, is a "moneyed corporation" within the meaning of that phrase as used in the section of the crimes act (Gen. Stat. 1909, § 2621) declaring one guilty of forgery who fraudulently makes false entries in the account books of an association of that description.

Appeal from Thomas district court; CHARLES W. SMITH, judge. Opinion filed May 7, 1910. Affirmed.

*W. G. Bissell,* and *Edwin D. McKeever,* for the appellant.

*Fred S. Jackson,* attorney-general, and *E. H. Benson,* county attorney, for the appellee; *Park B. Pulsifer,* of counsel.

The opinion of the court was delivered by

MASON, J.: Alvin C. Chance was convicted under the statute (Gen. Stat. 1868, ch. 31, § 131; Gen. Stat. 1909, § 2621) forbidding the making of false entries in a book of accounts kept by a moneyed corporation. He appeals upon the ground that the Chicago Lumber and Coal Company, whose books he was accused of falsifying, being merely a mercantile organization, was not a "moneyed corporation" within the meaning of the section under which he was prosecuted, which reads:

"Every person who, with intent to defraud, shall make any false entries, or shall falsely alter any entry made in any book of accounts kept by any moneyed corporation within this state, or in any book of accounts kept by such corporation or its officers, and delivered or intended to be delivered to any person dealing with such corporation, by which any pecuniary obligation, claim or credit shall be or shall purport to be created, increased, diminished or discharged, or in any manner affected, shall upon conviction be adjudged guilty of forgery in the third degree." (Gen. Stat. 1909, § 2621.)

This section originated in New York. It was adopted by Missouri as early as 1835, and transplanted to Kansas in 1855. Mississippi also borrowed it. In no one of the four states does a prosecution under it appear to have been reported. The phrase "moneyed corporation" has been long in use in the legislation of New York, where, in the course of an elaborate classification of incorporated companies, it was early given by express enactment a peculiar meaning, limiting its appli-

cation to those companies having power to loan money upon pledges or deposits, or to make insurance. It has gained considerable currency in that sense, but evidently by reason of the statutory definition. It long ago found its way into the law dictionaries, where, however, the statute was cited as authority for the meaning given. (Bouvier's; Burrill's.) It has lately appeared in the general dictionaries. (Century; Webster's New International.)

Some provisions of the national bankruptcy act of 1867 were made applicable to "moneyed business or commercial corporations." (14 U. S. Stat. at L. p. 535, ch. 176, § 37.) The phrase quoted is usually written with a comma after the word "moneyed," and that punctuation is in accordance with the meaning intended, as appears from the fact that the original bill read "all corporations," and this was changed by amendment first to "all moneyed and business corporations," and then to its present form. (Cong. Globe, 39th Cong., part 2, p. 1002.) The courts have held that the three adjectives together cover all corporations organized for pecuniary profit, and this judicial interpretation has inadvertently been said to have been placed upon the words "moneyed corporation." (27 Cyc. 824.)

In a federal case in New York a statute of limitation of that state applying to actions against a director or stockholder of a moneyed corporation was invoked where the corporation involved was organized under the laws of Kansas. A question was raised as to what was meant by a moneyed corporation, and the supreme court in passing upon the matter showed a recognition of the fact that the New York usage was peculiar to that state and resulted from the statutory definition, saying:

"The next objection is that . . . the trust company is not a moneyed corporation within the meaning of the section in question. What is meant by the term 'moneyed corporation,' in section 394, is shown by the

definition of that term given in 1 Rev. Stat. 598, sec. 51, where it is said: 'Section 51. The term "moneyed corporation," as used in this title, shall be construed to mean every corporation having banking powers, or having the power to make loans upon pledges or deposits, or authorized by law to make insurances.' Although this definition refers to the meaning of the term 'moneyed corporation,' as used in that title of the revised statutes, we think it is plain that the same term used in section 394 of the code means the same thing as defined in section 51. The legislature used a term which was well known in the legislation of New York and for a long period of years a definite meaning had been given to it in that legislation, and when speaking of limitations of actions in regard to moneyed corporations nothing would be more natural than to assume that the term when thus used should have the same meaning applied to it as had been defined by the legislature when enacting legislation in regard to moneyed corporations. This legislation does not assume to enact what shall be 'moneyed corporations' in other states, but its effect is that when actions are brought in the state of New York, and the question arises whether a foreign corporation is or is not a moneyed corporation, that question will be solved in such a case as this, for the purpose of construing the statute of limitations of the state, by reference to the meaning given to the term by the legislature or courts of New York, rather than by reference to the legislation of another state under which the corporation may have been formed. The question is not what the corporation is, under the legislation of that other state, but whether what it is doing is of that description provided for and designated by the legislation of the state of New York." (*Platt v. Wilmot*, 193 U. S. 602, 610, 611.)

In *State of Texas v. Fidelity and Deposit Co.*, 35 Tex. Civ. App. 214, a statute was interpreted which provided the manner of taxing the personal estate of "moneyed corporations." In the opinion it was said:

"The expression 'moneyed corporation' was evidently intended to mean all classes of corporations organized and created for business purposes, as distinguishable from public or charitable or other corporations, which are exempted by law from taxation. This we believe

to be the usual meaning applied and given to this expression. . . . If the expression 'moneyed corporation' is to be applied in a narrow and restricted sense, the effect would be to create a taxation upon those corporations that handle and deal in money as their business, and would exclude from the operation of the law many corporations engaged in this state in business enterprises which are doubtless as profitable to them as is the case of those engaged in the banking and money loaning business. We should apply this expression in a common-sense way, so as to reach, if necessary, the intention of the legislature; that intention, in our opinion, being, as evidenced by all the laws upon this subject, to tax the property of all corporations which has a permanent situs in this state. The expressions 'moneyed business' or 'moneyed man' are often used, and in their common acceptation and generally understood meaning we do not apply them solely to the business of handling and loaning money, or to a man whose property merely consists of money; but, as said by the supreme court of Pennsylvania, in *Jacob's Estate,* 140 Pa. St. 274, 'that the word money is properly known and used as indicating property of every description is well known. Thus it is very common to refer to a person as a 'moneyed man' because of his large possessions. Yet those possessions may consist exclusively of real estate.'" (Page 230.)

In *Upton, Assignee, v. Tribilcock,* 91 U. S. 45, it was said: "The capital stock of a moneyed corporation is a fund for the payment of its debts." (Page 47.) Plainly the word "moneyed" was not there used in the restricted sense. The particular concern involved happened to be an Illinois insurance company, but the sentence has been frequently quoted in connection with various kinds of corporations organized for profit, but having no banking, loaning or insurance powers. (*Hamor v. Taylor-Rice Engineering Co.,* 84 Fed. 392, 395; *State Trust Co. v. Turner,* 111 Iowa, 664, 673; *Kelly v. Clark,* 21 Mont. 291, 321; *Lane's Appeal,* 105 Pa. St. 49, 60; *The Gogebic Investment Co. v. The Iron Chief Mining Co. and others,* 78 Wis. 427, 431.)

The question is not what the words "moneyed cor-

poration" mean at this time according to approved usage, but what they meant when the statute containing them was enacted. (*Clearwater v. Bowman,* 72 Kan. 92.) The New York definition was not in terms adopted by the legislature of Missouri or by that of Kansas. It can not fairly be deemed to have been adopted by implication in either state. In Missouri in 1835 there was no general law whatever in relation to corporations other than one regarding the service of summons upon them. In Kansas in 1855 there was no statutory classification of corporations according to their purposes. In neither state was there any separate class of business corporations to which the term "moneyed" applied. The section preceding that under consideration forbade the making of false entries in the records of public offices, concerning demands in favor of or against the state, or of any county, township or city, thus protecting the books of public corporations. The natural inference is that in adopting a similar provision concerning the book accounts of "moneyed corporations" the expression quoted was used in a broad popular sense, rather than with a narrow technical meaning, the purpose being to cover all private corporations having a capital stock and employing money for gain, as distinguished from those not designed for pecuniary profit, such as religious, benevolent or educational organizations.

The judgment is affirmed.