The State v. Kennedy.

---

No. 21,762.

THE STATE OF KANSAS, *Appellee*, v. L. W. KENNEDY, *Appellant*.

SYLLABUS BY THE COURT.

1. FORGERY—*Altering Entries in Depositor's Bank Pass Book—a "Book of Accounts."* The pass book issued by a bank to a depositor is a "book of accounts" within the meaning of section 131 of the crimes act (Gen. Stat. 1915, § 3512), which defines forgery in the third degree.

2. SAME—*Falsely Altering Entries in Bank Pass Book—Information Charges Forgery.* An information charging that defendant, with intent to defraud a telephone company, a corporation authorized to do business as such in this state, falsely altered a certain entry in the book of accounts kept by and in the offices of the corporation and commonly known as a pass book of deposits by the corporation in a na-

tional bank, describing the entry as originally made and as altered, and alleging that by the alteration it was then and there made to appear that a certain pecuniary obligation of the bank was purported to be created and affected, states facts sufficient to show the offense of forgery in the third degree.

3. SAME. Where an employee whose duty it is to collect the cash of a moneyed corporation and deposit it in the bank, falsely and with intent to cover up his defalcation, alters the date of an original entry in the pass book so as to prevent the officers or other employees of the corporation from discovering the true state of the account, the alteration constitutes forgery within the provisions of the statute referred to, notwithstanding the actual amount of money to the credit of the corporation remains the same after the alteration as before.

4. SAME—*Purpose of a Bank Pass Book—For Delivery to Person Dealing with Corporation.* In such a case, proof that the pass book was used by the corporation for the ordinary purposes of a pass book is sufficient to show that it was "delivered or intended to be delivered" to some person dealing with the corporation, within the meaning of the statute.

5. SAME—*Entries Altered to Conceal Shortage—Proof of Amount of Shortage Not Required.* Where there was proof that the person who made the alterations did so for the purpose of concealing a shortage in his accounts with the corporation, the state was not required to show the amount of such shortage.

6. SAME—*Telephone Company a "Moneyed Corporation."* A corporation engaged in furnishing general telephone service for hire is a "moneyed corporation" within the meaning of the statute. (*The State v. Chance,* 82 Kan. 392, 108 Pac. 791.)

7. SAME—*Trial—Instructions—Reasonable Doubt.* Where the instructions charge that before the defendant could be convicted on any of the counts of the information the jury must believe from the evidence beyond a reasonable doubt that he was guilty as charged, there was no error in failing to instruct that it would be their duty to acquit unless they did so believe from the evidence beyond a reasonable doubt.

8. SAME. Other instructions considered, and held not improper.

Appeal from Sedgwick district court, division No. 1; RICH-ARD E. BIRD, judge. Opinion filed October 11, 1919. Affirmed.

*Charles W. Hudson,* of Wichita, and *Ed. J. Fleming,* of Arkansas City, for the appellant.

*S. M. Brewster,* attorney-general, *Ross McCormick,* county attorney, *Thomas E. Elcock,* assistant county attorney, and *Clement F. Clark,* deputy county attorney, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The appellant was convicted of forgery in the third degree as defined by section 131 of the crimes act (Gen. Stat. 1915, § 3512), which reads:

"Every person who, with intent to defraud, shall make any false entries, or shall falsely alter any entry made in any book of accounts kept by any moneyed corporation within this state, or in any book of accounts kept by such corporation or its officers, and delivered or intended to be delivered to any person dealing with such corporation, by which any pecuniary obligation, claim or credit shall be or shall purport to be created, increased, diminished or discharged, or in any manner affected, shall upon conviction be adjudged guilty of forgery in the third degree."

For three or four years prior to 1915 the appellant was cashier of the Missouri & Kansas Telephone Company at Wichita. In each of the eight counts of the information he was charged with a separate offense—that of falsely altering a certain entry in a certain book of accounts, commonly known as a pass book of deposits made by the telephone company in the Kansas National Bank of Wichita. The language employed in each of the separate counts of the information was the same, except as to the date of the original deposit and the amount thereof. In the first count it was charged that the pass book when originally made read "February 2, 1915—$2,993.11," and when falsely altered was made to read "January 30, 1915— $2,993.11," and—

"That by said alteration of said entry in said book of accounts it was then and there made to appear that a certain pecuniary obligation of the said The Kansas National Bank in the sum of $2,993.11 was then and there purported to be created and affected."

The appellant contends that the information fails to state facts sufficient to constitute an offense, and that it was error to overrule a motion to quash the information. This contention is based upon the rather technical objection that a pass book of a bank is not a book of accounts, and that the pass book in this case was not a book of accounts kept by the telephone company. It is insisted that within the meaning of the words as used in the statute the pass book was "kept by" the bank; that "kept by" in the statute does not mean the physical possession or custody or control of the book, but the entering therein of credits and debits; that if it was a book of accounts at all,

then it would be a book of accounts "kept by" the bank, and not by the depositor. We find no force in this contention. The common usage by which pass books are issued by banks to depositors is well known and understood. Every entry made there by the party who is authorized to make it, which is the receiving teller of the bank, is entered with the depositor's consent, and amounts to an admission by both parties of a credit in the depositor's favor. While not conclusive, it is *prima facie* evidence of the condition of the depositor's account.

The definition of bank book given in 5 Cyc. 226 is:

"A book kept by a customer of a bank, showing the state of his account therewith." (Wharton L. Lex.)

In 1 Words & Phrases 839 it is said:

"In law the words 'book account' have a well-settled meaning. A book account is detailed statement kept in a book, in the nature of debit and credits between persons, arising out of contract or some fiduciary relation. Rap. Law Dict. A less technical definition given by the general lexicographers is 'an account or record of debit or credit kept in a book.' "

In the present case the telephone company was the holder of the pass book. It was the property of the company, and was kept by it. It was a matter of no importance that an employee of the bank was authorized by the depositor to make the entries. We hold, therefore, that a pass book issued by a bank to a depositor is a book of accounts kept by the depositor, within the meaning of the statute in question.

The testimony against the appellant was overwhelming, and was made up in part of positive statements of a witness who saw him make the alleged alterations, and to whom he made numerous admissions showing his purpose and intent in making the alterations. It was his duty as cashier to receive the money that came into the local office and deposit it in the bank. There is abundant evidence to show that he was short in his accounts. It was the duty of another employee who first received the cash to take charge of the stubs representing receipts for services, and when she received the cash she would give a duplicate receipt to the person who paid it. She would then hand the cash to the appellant, and he would return the stubs to her, so that her accounts would balance for the cash she had delivered to him. The evidence showed that the amount of the embezzlement by the appellant gradually in-

creased, and that, in order to cover the shortage, the dates of entries in the bank pass book were changed by him so as to make it appear that a particular deposit was made at an earlier date, thus giving him that much additional time to conceal his shortage by the accumulation of current receipts. He was seen by the other employee to make the particular alterations set forth in the information. He made them with an acid or chemical. In each instance the date of the particular deposit was altered, but there was no alteration in the amount of the deposit. It is insisted that there was a failure to allege facts showing that the alterations created or increased, diminished or discharged, or in any manner affected any pecuniary obligation, claim or credit, and that the motion to quash should have been sustained; and further, that the alterations could not have defrauded the telephone company or anyone else, because the actual deposits as made remained actually in the bank after the alterations. It is true that there was on deposit in the bank the same amount of money to the credit of the telephone company after each alteration as before; but by the alteration of the date which evidenced a particular deposit to an earlier or later one it was made to appear that the bank's obligation to the telephone company was changed in point of time. Each of the altered entries was of apparent legal efficacy or evidence of a legal right. The purpose of a pass book is to inform the holder of the state of his bank account. Where an employee, whose duty it is to collect the cash of a moneyed corporation and deposit it in the bank, falsely, and with intent to cover up his defalcation, alters the date of an original entry in the pass book so as to prevent the officers or other employees of the corporation from discovering the true state of the account, the alteration constitutes forgery within the provisions of the statute referred to, notwithstanding the actual amount of money to the credit of the corporation remains the same after the alteration as before.

It was not necessary that the state produce evidence concerning any particular use of the pass book by the corporation. Proof that it was used for the ordinary purposes of a pass book was sufficient to show that it was "delivered or intended to be delivered" to some person dealing with the corporation, within the provisions of the statute. Nor was it necessary in order

to sustain a conviction to show what the total amount of appellant's shortage was. It was not a prosecution for embezzlement, but for falsely altering certain entries in a book of accounts with intent to defraud; and the amount of the defalcation of the appellant was not important; the only purpose of proving that a shortage existed was to show the intent with which the alterations were made.

There is a further complaint that there was no evidence that the telephone company was a moneyed corporation. There was the testimony of one of the officers of the corporation that it did a general telephone business for hire, and there was testimony showing the receipt of money for services. It was, therefore, a moneyed corporation within the meaning of section 131 of the crimes act, as was held in *The State v. Chance*, 82 Kan. 392, 108 Pac. 791.

It is urged that the court erred in failing to instruct the jury that it would be their duty to acquit unless they were satisfied of defendant's guilt beyond a reasonable doubt. In a half dozen instructions the court charged that before the defendant could be convicted on any of the counts, the jury must believe from the evidence beyond a reasonable doubt that he was guilty as charged therein. It was not necessary to follow the words of the statute and charge that it would be their duty to acquit unless they were so satisfied. The court gave the usual instruction that—

"Upon the question of intent, the law presumes a man to intend the reasonable and natural consequences of any act intentionally done by him, and this presumption of law prevails unless from a consideration of all the evidence bearing upon the subject you entertain a reasonable doubt as to whether such intent did in fact exist."

We concede that the intent to defraud was the gist of the action, but there was such an abundance of proof to show the intent with which the alterations were made that it is difficult to see how a mere statement of the general presumption upon the question of intent could possibly have hurt the appellant.

There was no error in failing to instruct upon circumstantial evidence. There was no request by appellant for any particular instruction upon this character of evidence, and, moreover, most of the evidence was positive instead of circumstantial. There is a general complaint of the court's instruction defining

reasonable doubt. It is not stated in what respect the definition is erroneous. We have examined it carefully, and find no ground for the complaint.

Complaint is made of instruction No. 4, which charged that it was incumbent upon the state before conviction to prove that the alleged crimes were committed within two years prior to the commencement of the action: "to wit, December 8, 1916." The complaint upon which the information is based was filed on November 20, 1916, and it is urged that the appellant should not legally be convicted for any offense committed after November 20, 1916. Neither the dates fixed by the information nor by the proof relate to acts committed after the complaint was filed. We find no error in the instructions, nor in the refusal to grant a new trial.

The judgment is affirmed.